Bland, Chancellor.
This case standing ready for hearing, and having been submitted without argument, the proceedings were read and considered.
Marriage has been considered- among all nations as the most important contract into which individuals can enter, as the parent not the child of civil society.(a) It would seem,-that in the dark ages a notion prevailed of the mysterious nature of the contract of marriage, in which its spiritual nature almost entirely obliterated its civil character; by which notion, some were carried so far as to say, that a marriage of an insane person could not be invalidated on that account. In more modern times, it has been considered in its proper light, as a civil contract, as well as a religious vow, and, like all civil contracts, will be invalidated by want of consent of capable persons.(b) It has been, most commonly, every where celebrated by some religious solemnities ; and, from its nature and objects, has been held to be obligatory during the joint lives of the parties, without the power of being thrown off at the pleasure of either or both of them ;(c) except perhaps in the single instance, according to the ancient and now obsolete law, where the husband or wife with the consent of the other, became a monk or nun professed, whereby the contract of marriage was virtually dissolved.(d)
According to the law of England, a contract of marriage is not deemed complete, so as to entitle the wife to dówer, and the issue to inherit, unless it be celebrated in the face of the church, or with the blessing of a priest.(e) In Scotland no religious ceremony is necessary to constitute a legal marriage ;(f) and in Eng *482 land, during the time of the Commonwealth, marriage was allowed to be contracted before a justice of the peace.(g) In Maryland there was a time when marriage might have been legally contracted before a county court or in presence of a magistrate;(h) but other provisions having been made upon the subject by the legislature of the Province, (i) and by the General Assembly of the State, (j) it would now seem to be certainly the most correct, if not the only legal mode of contracting marriage, here as in England, by having it celebrated in the face of some church, or with the blessing of a clergyman.
In general it is sufficient to show, that a man and woman have cohabited as husband and wife; have represented themselves as such; or have been reputed in the neighbourhood of their residence to have been legally married, to establish the fact of their marriage and the legitimacy of their children. The only exceptions to this rule are the cases of a prosecution for bigamy, and an action of criminal conversation, in each of which, proof of an actual marriage is necessary. For although the action of crim. con, is, in its form, properly a civil action, yet it is in the nature of a criminal prosecution; and if proof of cohabitation or reputation were received as alone sufficient evidence of the marriage, it would place it in the power of the parties to collude together and pass-themselves off as husband and wife occasionally for the express purpose of profiting by such a suit. (k) But although, in such cases, the mere general reputation of a marriage may not be deemed sufficient, yet it appears, that the deliberate admission of the defendant in an action of crim. con., that the woman was the wife of the plaintiff; or the confession of the accused of the fact of the first marriage in a prosecution for bigamy, will even in those cases be received as sufficient to establish the fact of the marriage.(l)
In England the spiritual court has jurisdiction to inquire into the validity of a contract of marriage; and may, in certain cases, determine, that it is wholly void, or decree, that it be dissolved, and that the parties be divorced; but in all cases not falling within the jurisdiction of the ecclesiastical courts the parliament alone can grant relief, (m) In Maryland, there never having been an ecclesiastical court, and no power to grant a divorce, by annul *483 ling, for any cause, a contract of marriage which was originally valid, ever having been conferred upon any of the courts of justice, it follows, that a divorce can only be granted by an act of the General Assembly, (n) But all questions concerning alimony, even under the provincial government, were considered as having devolved upon the Court of Chancery. It was however provided,(o) that the general court should have power, on an indictment or by petition of either party, to inquire into the validity of any marriage, and might declare any marriage, contrary to the marriage act, or any second marriage, the first subsisting, null and void. This law, as it would seem, may now, since the abolition of the general court, on proper application, be executed by a county court. This court has been clothed with no such authority to determine the validity of a contract 'of marriage; but, by virtue of its general jurisdiction in matters of fraud affecting contracts, it would seem, that, considering marriage as a mere civil contract, it may, at the instance of either party, declare a marriage to be null and void, which has been procured by abduction, terror and fraud, (p)
In England, the validity of a marriage which is not absolutely void but merely voidable, can only be drawn in question and determined, in a suit instituted for that purpose, in the ecclesiastical court. But, as by the death of the husband, or the wife, the marriage is at an end, so any then depending suit, which may have been instituted during their- lives for that purpose, is thereby immediately abated, and cannot be, in any way, revived or further prosecuted; nor can any other judicial proceeding be thereafter instituted, in the ecclesiastical courts or elsewhere, for the purpose of declaring a marriage, which has been thus terminated by the death of either party, to have been null and void, for the purpose of bastardizing the issue of such marriage, or barring the husband of his courtesy, or the widow of her dower; nor can any one, by any judicial proceeding be bastardized after his death, who had carried the reputation of legitimate during his life; because wrongs, and personal defects die with the individual; and the peace of families and the nature of the testimony by which alone pedigrees are capable of being traced, in cases where a party makes title by *484 descent, require that there should be a limitation beyond which the institution of any judicial proceeding for the purpose of trying the validity of any marriage or the legitimacy of any person ought not to be allowed.(q) If these principles be correct, and as entirely applicable here, under different forms of judicial proceeding, as in England, it follows, that there can now, after the death of Mary, be' no judicial proceeding had to declare her second and third marriages, with Davidson and with Fulton, void for the purpose of bastardizing her issue by either of them.
But the issue of Mary by her second and third marriages, which were absolutely void, not merely voidable, are here claiming as parties to this suit; and found their title to recover materially and essentially upon the validity of tliose marriages, and their own legitimacy as the fruit of them. In all such cases, where a party claims as heir or next of kin, and his own legitimacy, or that of the deceased under whom he claims, is thus necessarily involved, and put in issue, it never has been questioned, that the court might inquire into and decide upon the validity of the marriage, or the fact of legitimacy. This has been often done in England,(r) and has also been allowed by the courts of this state;(s) because, wherever the validity of a marriage or the legitimacy of a, party forms a component part of the matter in controversy, it becomes indispensably necessary, that the court should inquire into and determine upon that fact, as well as every other part of the case; for otherwise it would be to suppose a suit brought before a court, which had not a capacity to try the cause of action, (t) And upon that ground, although it is perfectly well settled, that the Court of Chancery has no criminal jurisdiction whatever, and is in its institution and forms of procedure absolutely civil, yet if a bill be filed in it for the purpose of setting aside a deed or to be relieved against a will on the ground of fraud, the instrument complained of may be shewn to be a forgery: and the fact of forgery may, when thus incidentally involved, be determined and relief given, founded upon a criminal fact, although it would be altogether improper for it directly to decide upon any such question upon a criminal charge. (u)
*485 It appears, that the first marriage of Mary with John Lewis was legally had and solemnized in Ireland; hence, according to the law of nations, it must be held to be a valid marriage here ; for otherwise the rights of mankind would, in this respect, be in a most precarious and uncertain condition, (v) And consequently the subsequent marriages of Mary in Maryland with Davidson-, and after his death with Fulton, while her husband John Lewis was alive, must be considered as utterly void.
When a question of legitimacy becomes thus involved in a controversy in a court of chancery, it is said to be usual to make up an issue, and have the matter tried' by a jury who are the proper judges of fact.(w) But it is not indispensably necessary, in any case, that the Chancellor should have any fact determined by a jury. It is only when he entertains a reasonable doubt as to the fact, and when it depends on evidence the weight of which can be better estimated by a jury, or where the testimony is very obscure and contradictory, if he thinks fit that the Chancellor, for the information of his own conscience, may have recourse to this auxiliary mode of obtaining it. (x) But in this case the proof is so clear and demonstrative, that there is not the smallest room for a doubt upon the subject; therefore I hold it to be my duty to pronounce an immediate decree.
The proofs clearly establish the fact, that the late Mary, the mother of the plaintiffs, had been, long previously to their birth, legally married, and was then the lawful wife of a certain John Leiois, who at the time of the marriage, and continually ever since, has resided, and is now living in Ireland. And consequently these plaintiffs, who were all born in Maryland many years after their mother came to and resided in this state, are all of them illegitimate ; and, as such, they cannot take as her legal representatives, or as the next of kin of the late Henry Somervell. The act of 1825, ch. 156, has no retrospective operation, and therefore cannot affect this case.
Whereupon it is Decreed, that the bill of complaint be'dismissed with costs to be taxed by the register.

 Dalrymple v. Dalrymple, 2 Hag. Con. Rep. 54.

 Turner v. Meyers, 1 Hag. Con. Rep. 414; Browning v. Roane, 2 Phill. Rep. 69; Shelf. Lun. 59, 446; Portsmouth v. Portsmouth, 1 Hag. Rep. 355.

 Gordon v. Pye, Fergusson’s Rep. Append, note A. 349; Westmeath v. Westmeath, 1 Jac. Rep. 138.

 Co. Litt. 132.

 Dalrymple v. Dalrymple, 2 Hag. Con. Rep. 54.

 Dalrymple v. Dalrymple, 2 Hag. Con. Rep. 54.

 4 Bac. Abr. 531, 536.

 1702, ch. 1, s. 4; 1715, ch. 44, s. 25.

 1717, ch. 15.

 February 1777, ch. 12.

 Morris v. Miller, 4 Burr. 2057; Birt v. Barlow, Doug. 171.

 Stark. Evi. 4 pt. 36 & 1185.

 4 Bac. Abr. 554.

 Utterson v. Tewsh, Fergusson’s Rep. 23; Mrs. Levett’s Case, Ferg. Rep. appen. note G. 382.

 February 1777, ch. 12, s. 15.

 Portsmouth v. Portsmouth, 1 Hag. Rep. 355; In matter of Fust, 1 Cox. 418; Ex parte Turing, 1 Ves. & Bea. 140; Ferlat v. Gojon, 1 Hopk. 478.

 Co. Litt. 33; 1 Hall. Const. Hist. Eng. 395; Kenn’s case, 7 Co. 142; Hinks v. Harris, 4 Mod. 182; Hemming v. Price, 12 Mod. 432; Haydon v. Gould, 1 Salk. 119; Brownsword v. Edwards, 2 Ves. 245; Elliott v. Gurr, 2 Phill. 16.

 Alleyne v. Grey, 2 Salk. 437; Mace v. Cadell, Cowp. 233; Stark. Evi. 4 pt. 218, 931.

 Cheseldine v. Brewer, 1 H. & McH. 152; Ferlat v. Gojon; 1 Hop. 494.

 1 Bac. Abr. 571.

 Barnesly v. Powel, 1 Ves. 120, 287; Stace v. Mabbot, 2 Ves. 553; Duntze v. Levett, Fergusson’s Rep. 63; Stark. Ev. 4 pt. 931; Peake v. Highfield, 1 Russ. 560.

 Roach v. Garvan, 1 Ves. 159; Herbert v. Herbert, 3 Phill. 58; Duntze v. Levett, Ferg. Rep. 63; Edmonstone v. Lockhart, Ferg. Rep. 168; Butler v. Forbes, Ferg. Rep. 209; Herbert v. Herbert, 2 Hag. Cons. Rep. 263; Ruding v. Smith, 2 Hag. Cons. Rep. 371.

 Revel v. Fox, 2 Ves. 270; Read v. Passer, 1 Esp. Rep. 213.

 Short v. Lee, 2 Jac. & Walk. 496; Peake v. Highfield, 1 Russ. 560.