CHAUNCY BROOKS ET AL.
vs.
HENRY H. DENT,
ADMINISTRATOR D. B. N. OF
HENRY BRAWNER ET AL.

MARCH TERM, 1850.

[SECRET TRUST—RESULTING TRUST AS AGAINST CREDITORS—STATUTE OF FRAUDS.]

A HUSBAND and wife, for a *bona fide* and valuable consideration, may contract for a transfer of property from him, to her.

A settlement upon the wife after marriage, in pursuance of a valid agreement before marriage, is good and binding against the creditors of the husband.

In marshalling assets, lands descended, are to be applied before lands devised.

Evidence of declarations, made by a husband during coverture, is not admissible against creditors of the husband, to establish a secret parol agreement between him and the wife, in reference to property standing in the husband's name during his lifetime.

But if the wife had performed her part of an agreement, made between her husband and herself, she would have an equity as against the husband and his heirs, to have it carried into effect on their side, though the agreement was only by parol.

The court does not favor secret trusts, and will not allow them to be set up to defeat the rights of creditors.

If it could be proved, that the land was purchased with the wife's money, then as between her and the heirs at law, or volunteers claiming under her husband, a trust would result to her, being implied by law, from the intention of the parties, and the justice of the case, and which being expressly excepted from the statute of frauds, may be proved by parol.

But such resulting trust cannot be set up to the prejudice of the rights of subsequent creditors.

The act of 1785, ch. 72, sec. 11, authorizes the court to direct a deed to be recorded, but with a limitation, that it shall not effect the rights of creditors becoming such after the execution of the deed.

Where a party holding a bond of conveyance is in possession, and has paid the purchase money for the land, the court will direct a conveyance, which will prevail against creditors whose judgments intervened between the equitable title by the bond and the legal title by the decree.

Where two persons executed a joint note, the estate of the one, will, under the chancery rule, be charged with only half the amount, unless it is shown, that he is the principal debtor, or that the other is insolvent.

The weight of American authority, is, that it is sufficient to bind a surety if his *engagement* to pay the debt of another is in writing, although the *consideration* may not be reduced to writing. But where both the *consideration* and the *engagement* are in writing, the surety is bound, even according to the strict English construction of the statute of frauds.

[This suit originated in the filing of a creditor's bill on the equity side of Charles County Court, on the 12th of November, 1840, against Maria C. Brawner, executrix, and the heirs and devisees of Henry Brawner, deceased, and was subsequently transferred to this court, under the Act of Assembly in relation to such cases depending in the county courts, constituting the First Judicial District.

Maria C. Brawner departed this life in the latter part of July, 1847, and on the 22d of February, 1848, a bill of revivor was filed against the defendant, Dent, as administrator d. b. n. of said Brawner.

One of the claims of the suing creditors is founded upon a promissory note made by said Brawner and one Ignatius Stewart, in favor of Brooks, Stephens & Co., dated the 22d of April, 1837, for the sum of $2112, and payable six months after date. The other is on an open account for articles of merchandise sold to said Stewart on the 15th of October, 1836, and amounting to the sum of $1901 30, with interest to the 18th of September, 1838, on the credit of a letter from said Brawner, undertaking the payment of the same; of which the original being lost, parol proof was offered.

Henry Brawner departed this life sometime in the fall of 1838, having first made and duly published his last will and testament, by which he devised to his wife, Maria C. Brawner, in fee, a tract of land called "Elleslie," and constituted her his sole executrix, which office she undertook, and returned an inventory of his personal estate, amounting to $7943.

This tract was purchased by the testator, at a chancery sale, made in 1825 or 1826, by Daniel Jenifer, acting as trustee, for the sum of $5161 87, and was conveyed to him by the trustee, on the 22d of August, 1835, and it continued until his death, upon the land records of Charles county, as his absolute property and estate.

Mrs. Brawner, the widow and devisee, in her answer, claims this tract of land as her own, or that she must be regarded as a preferred creditor thereof, by reason of an agreement between her and her husband, set up in her answer, that she would con-

sent to the sale of her maiden real estate upon the condition that the proceeds thereof should be invested in other real estate for her benefit. This tract called "Elleslie," the answer alleges, was purchased by her husband in conformity with said agreement, and should be now regarded as her estate, or subject to her claim, as a preferred creditor.

The case shows that a parcel of land inherited by Mrs. Brawner, was sold and conveyed by her and her husband to the purchaser, in April, 1826, for the sum of $4500; and there is parol evidence in the record to show that Brawner, her husband, had been several times heard to say, that he had paid for "Elleslie in part with her money received from the sale of the land of his wife, and that it was intended for her in lieu of the land which had belonged to her, and which had been sold as aforesaid," and in a clause of his will there is a declaration to the same effect.

The plea of limitations was also made to these claims, and the statute of frauds relied upon as a defence to the one upon open account.

The Chancellor, after stating the facts, said:]

THE CHANCELLOR:

The case presents, and there have been discussed at the bar, one or two questions of considerable interest, and upon these the opinion of the court will be briefly expressed.

The question first to be considered, is, how far this alleged agreement between husband and wife, supposing the proof offered to establish it to be sufficient for that purpose, and to proceed from an exceptionable source, can be set up in prejudice of the claims of creditors who became such subsequently to its date?

It is not doubted that a husband and wife may contract for a *bona fide* and valuable consideration, for a transfer of property from him to her, as was said by the Chancellor in *Livingston* vs. *Livingston*, 2 *Johns. Ch. Rep.*, 537; see also *Atherly on Marriage Settlements*, 160, 161. Nor can it be questioned, that a settlement upon the wife after marriage, in pursuance of

a valid agreement before marriage, may be good and binding as against the creditors of the husband. But this is not the case of a settlement either before or after marriage. Here there has been no settlement at all, and the question is, whether this particular parcel of land is so impressed with a trust for the benefit of Mrs. Brawner, as to protect it from the claims of the creditors of her husband.

It is, to be sure, contended by the counsel of Mrs. Brawner, that she claims the legal title under the devise to her in the will. But, if she rests her defence upon that title, she must be regarded as a volunteer, and take subject to the claims of creditors ; though, in marshalling the assets, the estate devised to her, could not be reached until the descended lands, if any, are first disposed of. 4 *Kent's Com.*, 421 ; *Chase* vs. *Lockerman*, 11 *G. & J.*, 185.

It is to be observed, that the only proof of the agreement is to be found in the parol declaration of the husband, made during the coverture, and it needs but little consideration to show how dangerous it would be to allow such evidence to defeat the rights of creditors. The observations of Chancellor Kent upon this subject, in the case of *Reade* vs. *Livingston*, 3 *Johns. Ch. Rep.*, 488, are full of instruction.

The objection is not placed upon the ground that the agreement was by parol, because, though by parol, still, if carried into effect on the part of the wife, by selling her maiden estate, she would have an equity as against the husband or his heirs, to have it carried into effect on their side ; and the statute of frauds would interpose no obstacle. The objection is, that the proof of the agreement is derived exclusively from declarations made by the husband during the coverture ; the admissibility of which declarations, for such a purpose, in opposition to the rights of creditors, it seems to me, is very questionable.

But, waiving that objection, and supposing the agreement set up in the answer was in proof by a witness who was present when it was made, I am still of opinion, that, as against the creditors of the husband, and particularly those who became such after the title to the land was vested in him, it cannot be allowed to stand.

The trust created by that agreement was a *secret* trust. It dates back to the year 1825 or 1826, and though Mr. Brawner lived until the fall of 1838, and the record title was in him from the month of August, 1825, no attempt was made during his life to assert any right or title founded upon the agreement. So far as the record in this case informs us, the first assertion of this right on the part of Mrs. Brawner, was made in her answer to this bill, filed in September, 1845.

Now, it seems to me, it would be establishing a precedent of the most pernicious and perilous character, to allow these secret trusts to be set up to defeat the rights of creditors. If the alleged agreement had been performed by the husband, and the title of the wife placed upon the public records of the county, the case would have presented very different considerations. But here is a case, in which, as early as 1825 or 1826, the husband became the purchaser of the property in question, at a sale made under the authority of a Court of Chancery, and from the year 1835 until the answer of the wife was filed in this cause, in 1845, his title was spread upon the public land records of the county, and he was held out to the world as its undisputed owner.

As I am fully persuaded the secret agreement put forward in the answer of Mrs. Brawner, cannot avail her, even if shown to exist by unexceptionable evidence, as against the creditors of her husband, or at all events against subsequent creditors, it remains to be seen whether she can successfully assert a title to the property upon any other ground.

If it could be shown clearly, that the money with which this land was purchased, was supplied by the wife, a trust might result to her, being implied by law, from the intention of the parties, and the nature and justice of the case ; and such trust, being expressly excepted from the operation of the statute of frauds, may be proved by parol, not only against the face of the deed itself, but even in opposition to the answer of the trustee, and possibly after the death of the nominal purchaser. *Boyd* vs. *McLean et al., Johns. Ch. Rep.,* 582 ; *Dorsey* vs. *Clarke et al.,* 3 *H. & J.,* 551 ; *Maccubbin* vs. *Cromwell,* 7 *G. & J.,* 157 ; *Bottsford* vs. *Burr,* 2 *Johns. Ch. Rep.,* 405.

If, then, this was a contest between Mr. Brawner and the heirs at law of, or persons claiming as volunteers under her husband, and it could be made out, by clear and satisfactory proofs, that the money with which "Elleslie" was paid for was advanced by Mrs. Brawner, there might, perhaps, be no difficulty in declaring, that a trust resulted to her by operation of law. This, however, is not a case between her and volunteers under her husband. The rights of subsequent creditors are involved here, and the question is, whether, assuming the proof to be admissible and adequate, a trust of which they could have had no knowledge, and which results only by construction of law, and to subserve the purposes of justice, as between the party in whose name the conveyance is taken and him by whom the purchase money is paid, shall be set up to their prejudice.

No case has been, or, it is believed can be, produced, to establish the affirmative of this proposition; and it seems to me not only replete with danger and mischief, but to be in conflict with settled principles.

Under the act of 1785, ch. 72, sec. 11, a deed, to the validity of which recording is necessary by law, may be recorded by a decree of this court, with a limitation, however, that it shall not in any way affect the creditors of the party making such deed, who may trust such party after the date of the deed ; and, therefore, as to those creditors who trusted Mr. Brawner after the date of the alleged payment with the money of the wife, even if a deed had been executed by him declaring the trust, and that deed had been withheld from the records it could now only be recorded or enforced, with the savings of the rights of these creditors, as expressed in the proviso of the statute. *Pannell & Smith* vs. *Farmers' Bank*, 7 *H. & J.*, 202.

There can be no doubt, as was said by the Court of Appeals in *Alexander et al.* vs. *Ghiselin et al.*, 5 *Gill*, 181, that this court may direct a conveyance, where a party holding a bond of conveyance is in possession, and has paid the purchase money ; and that such conveyance will prevail against creditors whose judgments intervened between the equitable title by the bond and the legal title by the decree and deed.

But here there was no possession delivered, nor bond of conveyance or other instrument of writing executed.   On the contrary, Mr. Brawner, the husband, retained the possession and use of the property to the day of his death, and was, according to all the manifestations of title known to the law, the absolute and unqualified owner of it.   The title now set up as against his creditors, who trusted him upon the faith of this property; rests either upon a secret verbal agreement, or upon the legal doctrine adopted to advance the purposes of justice as between the party who actually pays the money and him to whom the conveyance is made, that a trust results in favor of the former, and will be enforced in equity as against the latter.

But, in a case like the present, and as against subsequent creditors, I am of opinion, no such trust can be raised, or results by legal implication ; and with respect to the verbal agreement relied upon in the answer, and already spoken of, it having reference to land, and thus being unlike the case of Alexander vs. Ghiselin, would be void by the statute of frauds, as expressly stated by the court in that case.

I, therefore, think no reason has been shown why the tract of land called "Elleslie" should not be liable to be sold to pay the creditors of the deceased Henry Brawner.

This bill was filed on the 12th of November, 1840, and the promise by Mr. Brawner, as proved by Judge Crain, in July or August, 1838, is, in my opinion, a complete answer to the plea of limitations.

With regard to the claim founded upon the promissory note signed by Stewart and the deceased, there being no evidence either that the latter was the principal debtor, or that Stewart is insolvent, I do not think that, according to the Chancery rule, the estate of the deceased can be charged with more than one-half that debt; but, as stated during the argument, the question will be reserved, with liberty to the complainants to introduce proof to obviate the objection.

The statute of frauds is relied upon as a defence against the claim founded upon the open account, and it is insisted that this is an attempt to charge the estate of the deceased with the

debt, default or miscarriage of another, contrary to the provision of the fourth section of that statute; which declares that a party shall not be so charged, "unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him properly authorized."

The evidence of Judge Crain conclusively proves that an agreement was signed by the late Mr. Brawner, binding him to pay this debt, and that it is lost, and upon diligent search cannot be found. Secondary evidence of the contents of the agreement, which was in the form of a letter from the deceased to Brooks, Stephens & Co., is, therefore, admissible, and, it appears to me, taken in connection with the other evidence, to furnish a full answer to the statute of frauds.

It might not be very easy to determine whether the engagement of Mr. Brawner in this case is a collateral or original one; and even though collateral, whether it might not be classed with those engagements, which being made at the time of the principal contract, was an essential ground of the credit given to the principal debtor, thus forming an original and entire transaction; and resting upon the consideration upon which the whole debt rested, may not be shown by parol proof, as not being within the statute, as was decided in *Seward* vs. *Vrendenburgh*, 8 *Johns. Ch. Rep.*, 29, confirmed in other cases in New York, and declared to be the reasonable doctrine in *De Wolf* vs. *Raband et al.*, 1 *Peters S. C. Rep.*, 476.

But the agreement in this case, as proved by the witness, is in strict conformity with the statute, both the engagement and consideration being in writing, even if it be necessary that the latter should be in writing, which, however, is said, by an eminent judge, to be against the weight of American authority. 3 *Kent's Com.*, 122, *note e.*

The witness says, he called on Mr. Brawner in July, 1838, for the payment and settlement of these claims, that Mr. Brawner admitted his indebtedness, that the claim on the open account was predicated on a letter written by Mr. Brawner to

Brooks, Stephens & Co. requesting them to let Mr. Stewart have goods.

The witness then goes on to speak of another conversation with Mr. Brawner, immediately preceding the August term of the County Court in 1838, when he begged the witness not to sue him, and to write to Chauncy Brooks that he would certainly make an early arrangement to pay the money—that the witness did write accordingly, desiring him to indulge Mr. Brawner, and that he would not sue him, as he considered Mr. Brawner perfectly safe, and that Mr. Brooks left it to his discretion. And upon cross-examination the witness said, that "the letter stated that he, Henry Brawner, would be answerable for any goods bought by Stewart from Brooks. It was dated, as nearly as I [he] can recollect, in 1836, and before the date of the account, which Mr. Brawner recognized to be correct, and promised to pay."

If, therefore, Stewart is liable upon this contract, and the engagement of Brawner is to be regarded as a collateral promise, which, however, does not necessarily follow from the fact that the account is made out against Stewart, still, the undertaking being in writing, and the consideration being likewise in writing, the case seems entirely free from difficulty, even if the English construction of the statute of frauds, requiring both to to be in writing, be adopted here.

I am, therefore, of opinion, that the statute of frauds is no defence against this claim, and that it is sufficiently proved.

I do not understand it to be insisted that the personal estate of the deceased is adequate to pay his debts, and, my opinion is, that there is satisfactory evidence of the insufficiency to authorize a decree for the sale of the realty.

The counsel for the complainants may, therefore, prepare a decree for that purpose, in which the question in reference to the liability of the estate of the deceased, for the whole amount of the note before mentioned, will be reserved, and with a further reservation of the right of Mrs. Brawner, or her personal representative, to establish her claim as a creditor, with respect

to the proceeds which may be derived from the sale of "Elleslie," as against the heirs at law or devisees of her husband, and of all other questions not settled by this opinion.