CATHARINE FARINGER, Perm't Trustee of JA-
COB FARINGER, *vs.* ELIZA RAMSAY.—SAME *vs.*
ELIZA RAMSAY and WILLIAM ERHMAN.

Where property is purchased with the money of A, and the deed given to B,
a *trust* results by operation of law in favor of A, and *parol* proof may be
used to set aside such a deed, and such evidence is not only admissible
against the face of the deed, but in opposition to the answer of the grantee.

But such deeds are *prima facie* evidence of the verity of their contents, and
when supported by the positive answer of the grantee, the testimony to set
them aside ought to be so clear and explicit, as to leave scarce a doubt on
the subject.

The rule allowing the introduction of parol evidence in cases of resulting
trusts, requires that courts should view it with the greatest caution; the
payment of the money by the *cestui que trust* must be clearly proved.

In this case the court refused to set aside two deeds, on the ground that there
was a resulting trust, because the testimony did not establish with sufficient
distinctness, that the property was purchased with the money of the pre-
tended *cestui que trust*.

APPEAL from the court of chancery.

The bills in these cases were filed originally on the equity
side of Baltimore county court, the one on the 2nd and the
other on the 3rd of July 1849. The causes were afterwards
removed to the court of chancery and consolidated by the chan-
cellor. The bill in the first case alleges, that on the — day of
— 1849, Jacob Faringer applied for the benefit of the insolvent
laws, and that on the 11th of June 1849, he in the meantime
having died, Catharine Faringer, his widow, the complainant,
became his permanent trustee. That she was married to him
in 1829, and had by him six children, five of whom were then
living, and all of whom had been supported by herself since
June 1841, when, without cause, he deserted her and went to
live with the defendant, Eliza Ramsay, with whom he con-
tinued to live in adultery until he died. That Jacob Faringer
was a money-making and money-saving man, who rapidly
acquired means which he from time to time invested, with a
view to secure to himself the advantage of it during his life,

and to Eliza Ramsay after his death, and to deprive the complainant and her children of all benefit of it in his life and after his death. That so contriving and intending, on the 7th of April 1845, he purchased a leasehold interest in a certain lot situated on the corner of Lombard and Canal street, from William E. Beale, for $800, and had the same conveyed to Eliza Ramsay for the secret purpose of having the benefit of it during his life, and after his death of giving it to said Eliza, disencumbered of his wife's interest therein; wherefore the complainant charges, that the contrivance of having the deed made to Eliza Ramsay was fraudulent as against her marital rights in said property, and conveyed no title to the grantee, and that she is entitled to have said property brought into the assets of the estate, to be administered according to the insolvent laws of the State. This bill also further charges, that said Jacob was possessed of other property, which for the same unlawful end he conveyed to said Eliza Ramsay, either to defraud complainant of her marital rights therein or to defraud his creditors thereof, and which she is entitled, as such trustee, to have decreed to be delivered to her, to be distributed according to the insolvent laws. The prayer is, that said leasehold estate, and all other property which may be discovered to have belonged to said Jacob, and to have been disposed of as aforesaid, may be decreed to be a part of the estate of the said Jacob Faringer, to be administered according to law, and for general relief.

The bill in the second cause avers, that on the 5th of February 1847, said Jacob purchased a like leasehold estate in another house and lot situated on Lombard street, near Canal street, and had the same conveyed to Eliza Ramsay by a deed therefor from Daniel J. Happold and Samuel Kramer, the owners thereof. That the purchase money was furnished by said Jacob, and the deed was made to said Eliza for the fraudulent purpose of enjoying the property during his life, and leaving it to said Eliza after his death, disencumbered of the interest of the complainant therein as widow of said Jacob, and for the further fraudulent purpose of rendering the same

free from the claims of his creditors and of complainant for a
support, which contrivance she charges was fraudulent, and
that in equity she, as the permanent trustee of said Jacob, is
entitled to have said property brought into the assets of the
estate of said Jacob, to be distributed according to law.
This bill further alleges, that the said Eliza, on the 2nd of
July 1849, sold this last property to one William Erhman,
who had full notice of her defective title thereto, and is made
a party defendant. The prayer is the same as in the pre-
ceding cause.

The answer of Eliza Ramsay to these bills admits the ap-
plication of Faringer for the benefit of the insolvent laws, and
the appointment of the complainant as his permanent trustee,
and that he and the complainant were married and had chil-
dren as stated in the bills. She submits that she is not bound
to answer the charge of adultery, and denies that said Jacob
accumulated and invested means for the purposes averred in
the bills. She denies that the property mentioned in the bills
was bought by said Jacob, and she positively avers that the
property was purchased for her, and paid for by her with her
own money, and the title made to her, as appears by the
deeds. That said Jacob never had, actually or constructively,
legally or equitably, any right, title or claim to said property,
and she denies all fraud and collusion, however averred and
charged in said bills.

The answer of Erhman disclaims all interest in the matter,
except such as devolved upon him by becoming a bidder for
the property mentioned in the second bill, and the same being
struck off to him as the highest bidder.

The deeds referred to in the bills were filed as exhibits, and
convey to the said Eliza Ramsay the lots in question, the one
for the consideration of $800, paid by the said Eliza to the
grantor, and the other for the consideration of $650, paid in
like manner to the grantors. The evidence taken in the causes
will sufficiently appear from the following opinion of the
chancellor, (Johnson,) accompanying his decree dismissing
the bills.

"These bills are filed by the complainant, as the permanent trustee in insolvency of Jacob Faringer, her former husband, but now deceased, and seek to set aside the deeds therein mentioned, not as frauds upon her marital rights, but upon the ground that they were made in prejudice of the rights of creditors. The allegations, to be sure, are not entirely free from ambiguity, it being in one place alleged, that one of the objects of the conveyances was to deprive the complainant and her children by the said Jacob of all benefit in it, in his life and after his death, and in another place, that the deeds were made to the said Eliza Ramsay, 'for the fraudulent purpose of enjoying the property during his life, and leaving it to the said Eliza Ramsay after his death, disencumbered of the interest of the complainant therein as the widow of the said Jacob, and for the further fraudulent purpose of rendering the same free from the claims of his creditors and of the complainant for a support,' wherefore, (the bill charges,) that the said contrivance was fraudulent, and that in equity she, (the complainant,) as the permanent trustee of said Jacob, is entitled to have said property brought into the assets of the estate of the said Jacob, to be distributed according to law.

"The bills, however, are filed by the complainant in her character of permanent trustee of Jacob Faringer, and not as his widow, claiming her share, as widow, of his personal estate, and the question therefore is, whether in the former capacity she is entitled to have the conveyances avoided and the property turned over to her, to be administered in insolvency. These cases then, in this view of the claim made by the bills, which upon the argument I understood to be the view taken by the plaintiff's solicitor, renders inapplicable to the questions now to be decided the principles settled by this court, in *Hays vs. Henry*, decided in February 1849, (1 *Md. Ch. Decisions*, 337,) because in that case the deed was impeached by the complainant as widow, and it was set aside, and the property ordered to be sold for the purpose of paying her one-third of the proceeds as widow, every other question affecting the residue of the proceeds of the sale being expressly reserved.

"The deeds in this case were all made to the defendant, Eliza Ramsay, and vest in her the absolute and unqualified title to the property embraced in them. There is not upon their face the slightest reservation or indication of an interest, legal or equitable, in Jacob Faringer, and consequently his permanent trustee cannot question their validity or effect, unless he can show, either that they are fraudulent under our insolvent system or under the statute of Elizabeth, or that from the nature and justice of the case, there is a resulting trust for the benefit of Jacob Faringer to be implied by law, from the fact that the consideration money was paid by him, and as trusts of this description are expressly excepted from the operation of the statute of frauds, the fact of the payment may be established by parol proof. But although the fact of the payment of the money may be shown by parol proof, the evidence must be so strong and decisive, as to leave no reasonable doubt upon the subject. The cases all concur in this, because of the danger of this description of proof, not only as tending to perjury, but on account of the insecurity to which its introduction exposes the paper title. *Boyd vs. McLean,* 1 *Johns. Ch. Rep.,* 582.

"In this case I have examined the proof very carefully, and though there are circumstances connected with the transaction, and the conditions, habits and occupation of the parties, from which it may be inferred that the purchase money for these parcels of property was paid by Faringer, I do not find that clear and positive testimony which the principle, so frequently and firmly settled, imperatively demands. The evidence upon this point, in my judgment, falls far below the standard established by the authorities, and I therefore do not feel warranted in declaring that this property is impressed with a resulting trust for Faringer.

"The deed from William E. Beale to Eliza Ramsay was executed on the 7th of April 1845, and that of Daniel J. Happold and Samuel Kramer to the same party on the 4th of February 1847. On the day of the execution of the first deed, Eliza Ramsay executed a mortgage of the property thereby

conveyed to her, to David U. Brown, to secure the payment of $212, for which she had given him her promissory note, so much being due to him from Beale, and which, by agreement of the parties, she, Eliza Ramsay, was to pay to Brown, and on the 31st of March, in the year 1846, the debt due to Mr. Brown having been paid by Eliza Ramsay, he, on that day, released the mortgage which she had given to him to secure its payment. Faringer died in the year 1849, (but the precise time of his death is not stated,) having in the same year applied for the benefit of the insolvent laws, and the bill alleges, that the complainant was appointed his permanent trustee on the 11th of June of that year. The bill does not allege, nor is it shown in proof, that he was indebted at the time of the execution of the conveyances in question, unless the charge that they were made to Eliza Ramsay for the fraudulent purpose of rendering the same free from the claims of his creditors, be construed to amount to such an allegation. It seems to me, however, that the averment referred to may quite as well apply to subsequent as prior creditors. But even if this is to be understood as meaning prior creditors, and that the object was to defraud them, there is no proof in support of the allegation, the existence of no such debt being shown. There is besides neither allegations or proof that Jacob Faringer, at the time of the execution of these instruments, contemplated availing himself of the insolvent laws, or that they were made, or caused to be made, by him, with any such view or expectation, and therefore they cannot be declared to be void as frauds upon the insolvent system. Neither, upon the allegations of the bill or the proofs in the cause, can they, in my judgment, be pronounced fraudulent and void under the statute of Elizabeth, as having been made with intent to delay, hinder and defraud creditors. It is not averred or proved that there were any creditors at the date of those conveyances to be delayed, hindered and defrauded, nor indeed is it directly charged or proved, that Faringer contracted debts subsequently, even if the deed could be regarded as fraudulent as against subsequent creditors. The fact of

his having taken the benefit of the insolvent laws in the year 1849, furnishes, to be sure, a strong presumption that he was indebted at that time, but there is nothing in the record, either in the shape of pleadings or proofs, to show the amount of such indebtedness or the value of the property which came to the hands of the complainant, as his trustee. But if these defects in the case of the complainant were removed, still there would exist the difficulty of showing that the money with which the property was purchased was supplied by Faringer. It is true there are circumstances from which it may be inferred that his money was paid for the property, but it is equally true that there are circumstances of a countervailing character, and the answer of the defendant responsive to the bill stands directly opposed to any such inference. Upon a careful consideration of the whole case, therefore, I do not feel myself at liberty to grant the relief prayed by these bills.

"The parties, by their counsel, have signed and filed an agreement, that the proof taken in the first of the aforegoing causes may be used in the second cause, as if taken in it, and for dividing the expense of executing the commission between the two causes which have been argued together and depend upon the same principles. They will therefore be consolidated and the bills dismissed, but under the circumstances they will be dismissed without costs."

From this decree the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Wm. M. Addison* for the appellant, contended.

1st. That the proof in the cause establishes a resulting trust in the property in favor of the permanent trustee. *Boyd vs. McLean*, 1 *Johns. Ch. Rep.*, 582. *Davis vs. Walsh*, 2 *H. & J.*, 329. *Oehler vs. Walker*, 2 *H. & G.*, 328. *Jackson vs. Bateman*, 2 *Wend.*, 271. 2 *Story's Eq.*, sec. 1201. *Lench vs. Lench*, 10 *Ves.*, 511. *Botsford vs. Burr*, 2 *Johns. Ch. Rep.*, 405. *Rider vs. Kidder*, 10 *Ves.*, 360.

2nd. That the fraud, out of which the trust results, may be inferred from facts and circumstances. *Watkins vs. Stockett,* 6 *H. & J.,* 442. *Davis vs. Calvert,* 5 *G. & J.,* 269. *Strike vs. McDonald,* 2 *H. & G.,* 191.

3rd. That the inability of Eliza Ramsay to make the purchase is a strong circumstance to prove an implied trust. *Lench vs. Lench,* 10 *Ves.,* 518. *Ryall vs. Ryall,* 1 *Atk.,* 57. *Ambler,* 413.

4th. Especially as she has offered no proof of her ability to have purchased. Where a person is in a condition to produce proof and does not produce it, the presumption against him amounts to absolute proof. *Gresley's Eq. Ev.,* 471, 487. *East India Co. vs. Donald,* 9 *Ves.,* 280, 281. *Lupton, vs. White,* 15 *Ves.,* 441. A court of equity, taking all circumstances together, decides *not* absolutely on which side the truth lies, but that it is highly and morally probable the truth is with one rather than with the other. *E. India Co. vs. Donald,* 9 *Ves.,* 280. *Lupton vs. White,* 15 *Ves.,* 441. *Gresley's Eq. Ev.,* 36.

5th That Faringer being in possession of means at the time of the purchase, and seeking for an investment, is a strong circumstance to prove that he supplied the money. *Lench vs. Lench,* 10 *Ves.,* 520. *Wilson vs. Foreman,* 2 *Dick,* 593.

6th. That a court of equity, when deciding on facts without the intervention of a jury, is authorised to make the same deductions which a jury would be warranted in making. *Thomas vs. Visitors of Frederick Co. School,* 7 *G. & J.,* 369. 2 *Atk.,* 228. *Gresley's Eq. Ev.,* 6.

7th. Property fraudulently conveyed by the deceased, is, in contemplation of law, assets for the payment of his debts, in the hands of his executors. *Twyne's Case,* 1 *Smith's Selection of Leading Cases,* 14. *Shears vs. Rogers,* 3 *Barn. and Ald.,* 363. *Rider vs. Kidder,* 10 *Ves.,* 360.

8th. The right of a wife to a support from her husband for herself and children, is a legal liability, and a conveyance to defraud her of it is void under the statute of Elizabeth, as made to defraud a creditor. *Worthington vs. Shipley,* 5 *Gill,*

460.  *Roberts on Fraudulent conveyances,* 56, 59.  1 *American Leading Cases,* 57.  2 *Bright on Husband and Wife,* 10.

9th.  Any conveyance by which a husband seeks to deprive his wife of her marital rights in his estate after his death, a court of equity will defeat.  *Hays vs. Henry,* 1 *Md. Ch. Decisions,* 337.  *Griffith vs. Griffith,* 4 *H. & McH.,* 101, confirmed in *Duvall vs. Farmers Bank of Maryland,* 4 *G. & J.,* 291.  *Coomes vs. Clements,* 4 *H. & J.,* 480.

*Charles H. Pitts* for the appellee, contended, that there was no error in the decree of the chancellor, because :

1st.  It is not averred in the bill nor shown by the proof, that Faringer was indebted at the time the conveyances in question were made.

2nd.  There is no averment or proof to show that the conveyances were made in contemplation of insolvency, or that they were made or caused to be made by him with a view and under the expectation of becoming an insolvent debtor. They are, therefore, not void, under our insolvent system.

3rd.  They are not void under the statute of Elizabeth, as being made to hinder and defraud creditors, because there is no averment or proof to show that there were any creditors to be hindered or defrauded.

4th.  The deeds are *prima facia* evidence of title in the appellee, and there is no legal sufficient evidence to show that Jacob Faringer ever had title to the property, nor to show that the money which was paid for the property was Faringer's, and therefore no resulting trust in favor of Faringer or his creditors is established.  1 *John., Ch. Rep.,* 482.

Le Grand, C. J., delivered the opinion of this court.

These suits, which were consolidated by the order of the chancellor, have for their object a decree, declaring certain property mentioned in the proceedings to be part of the insolvent estate of Jacob Faringer.

The bills were filed by his widow *as permanent trustee.* They claim the property as part of his insolvent estate.  It is true, they also say, that the deeds which are attempted to be

set aside as fraudulent, were made as well in fraud of the marital rights of the widow as those of the creditors, but they were filed by her, not as widow, but as permanent trustee of her husband, under his application for the benefit of the insolvent laws of this State.

It appears from the proceedings, that Jacob Faringer applied for the benefit of the insolvent laws some time in the year 1849, and on the 11th day of June, of the same year, (he in the meantime having died,) his wife, the complainant, became his permanent trustee.

That on the 7th April 1845, a certain leasehold interest in a lot of ground, in the city of Baltimore, was conveyed by its owner to Eliza Ramsay, and on the 5th February 1847, a like interest in another lot was also conveyed to her.

The bills, in substance allege, and charge, that the property was purchased by and paid for out of the means of Jacob Faringer, and the deeds made to Eliza Ramsay, with the view to defraud his creditors, and in fraud of the marital rights of his wife. The answer of the defendant, Ramsay, expressly denies the property was paid for out of the funds of Faringer, and avers it was paid for out of her own means.

It has been doubted whether it was competent to a party, by *parol*, to set aside a deed where the property is purchased with the money of A, and the deed given to B; but the weight of authority seems to sustain the right, and that in such a case a *trust* results, by operation of law, in favor of A; and that such evidence is not only admissible against the face of the deed, but in opposition to the answer of the grantee. The authorities on the subject are very fully collected and ably examined in the case of *Boyd vs. McLean*, 1 *John. Ch. Rep.*, 582. See also *Dorsey vs. Clarke*, 4 *Har. & John.*, 556.

In view of this doctrine a large body of testimony was taken in the case before the court. We have given it a very careful examination, and have arrived at the same conclusion as that reached by the chancellor.

It does not appear from any part of the case, Faringer was indebted either in 1845 or 1847, in which years the deeds were made, nor does the testimony establish with sufficient

distinctness the fact, that the property was purchased with the money of Faringer. A large portion of the testimony was clearly inadmissible for any purpose whatsoever, and must therefore be disregarded by the court, it having been excepted to below.

The remainder of the evidence, it is true, well justifies a strong *suspicion*, that the property was paid for out of the funds of the insolvent, but it does not establish the fact with such certainty as to warrant a court to so decide. We do not deem it necessary to give an analysis of the testimony, for many of the facts which it displays are wholly unfit for anything but strong reprobation. We content ourselves with saying, that the answer of the defendant, Ramsay, derives some support from the testimony of the witness, Brown, and from the fact that she actually paid a part of the money and gave her obligation for another portion, which she eventually paid. The circumstances relied on to overcome this evidence are derived entirely from her supposed poverty and the relations which are alleged to have subsisted between her and Faringer. It must be recollected, that the deeds are *prima facie* evidence of the verity of their contents, and when they are supported by the positive answer of the defendant, which has countenance from her agency in paying the money, the testimony to set them aside ought to be so clear and explicit as to leave scarce a doubt on the subject. The rule which allows of the introduction of parol evidence in cases of resulting trusts, requires, that courts should view with the greatest caution such evidence, impeaching as it does, solemn instruments, the evidence of title to land. " The authorities," say the court in *Dorsey vs. Clarke*, 4 *Har. & John.*, 557, "are clear that the payment of the money by the *cestui que trust* must be clearly proved, otherwise you render insecure titles depending on deeds and other written documents."

We concur with the chancellor in the opinion, that although there be sufficient in the evidence to awaken suspicion, yet it is not of a quality to warrant a court of equity to pass such a decree as is asked in this case.

*Decree affirmed.*