WALTER W. VOGEL *v.* LOUIS VOGEL.
[No. 36, January Term, 1929.]

148

*Decided March 21st, 1929.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Lewis W. Lake,* for the appellant.

*Henry M. Siegel,* with whom was *Herbert R. O'Conor* on the brief, for the appellee.

Pattison, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellee Louis Vogel, a practicing physician of Baltimore City, against his brother Walter W. Vogel, the appellant. The substantial allegations of the bill are as follows:

(1) That, on the 16th day of August, 1899, Louis Vogel and Charles F. Vogel, his brother, rented the premises on the northwest corner of Luzerne and Fayette Streets, in the City of Baltimore, for the purpose of there conducting a drug business, with the understanding between them that, upon the death of either, the business, including all the assets and good will thereof, was to belong to the survivor.

(2) That, on the 15th day of May, 1902, Louis Vogel and Charles F. Vogel purchased the leasehold interest in said property, at and for the sum of $2,000, subject to a ground rent thereon of $41.25, and had the title to the property conveyed "in the names of their parents Frederick Vogel and Mary Vogel." That at the time of the purchase thereof, the sum of approximately $336 was paid on account of the purchase price by Louis and Charles F. Vogel, out of the proceeds of the business conducted by them at the place named, and the balance of said purchase price, $1,664, was obtained by a loan, secured by a mortgage on the property, executed by the said Frederick Vogel and Mary Vogel, which mortgage indebtedness was repaid by the complainant and his brother Charles F. Vogel, out of the proceeds of the business conducted by them.

(3) That, although the leasehold interest in the property was conveyed to their parents, Frederick and Mary Vogel, it was expressly understood between the parents and the complainant and his brother, Charles F. Vogel, that the latter were the real owners thereof, as though the title was in their names, and "that they were not at anytime to relinquish their right of ownership therein." That their object "in having the title of said property assigned to their parents was to avoid the necessity of any legal proceeding on the part of their parents in the event they both should predecease their said parents, for it was" their desire "that their parents should have said property," should their parents survive them; and it was further the understanding "between the parties that in the event their parents should predecease the said sons, or either of them, arrangements were to be made whereby the title to said property was to be conveyed to said sons."

(4) That the complainant and Charles F. Vogel continued to conduct said business until the death of the latter, on the 20th day of October, 1905. That, although the complainant never, at any time, relinquished control or ownership of, or in, said drug business, "he, at the time of the death of his brother Charles F. Vogel, and his father Fred-

erick Vogel, assumed the management of said business. That, thereafter, the said defendant Walter W. Vogel, also became active in the management and conduct of said business until the year 1914, when * * * Frederick Vogel died and that thereafter the management of said business was continued by * * * Walter W. Vogel, and he has so conducted the same to the present time. That it is and has been well known and acknowledged by all the members of the family" that the complainant, "since the death of the said Charles F. Vogel, has been the sole owner of said business and that the said defendant Walter W. Vogel has been merely conducting and managing the same" for the complainant. "That the defendant also recognized" the complainant "as the owner of said business, but in the month of December, 1924, and since then the said defendant has refused to respect the rights" of the complainant "in said business."

(5) That, on the 16th day of November, 1906, the complainant purchased the reversionary estate of said premises on the northwest corner of Fayette and Luzerne Streets at and for the sum of $687.50, and though the title thereto was conveyed in the names of the parents, Frederick and Mary Vogel, the purchase price therefor was paid by the complainant, and it was understood that the property was to be held by them, Frederick and Mary Vogel, for the benefit of the complainant. That the object or purpose of placing the title of the property in the parents was the same as that already hereinbefore stated in respect to the leasehold interest conveyed to the parents.

(6) That "Frederick Vogel and Mary E. Vogel acting under the influence of domination of the said defendant Walter W. Vogel, by deed dated the 26th day of May, 1913, conveyed said fee simple property * * * to the Land Annuities Company in trust for themselves, so long as they or the survivor of them should live, and upon the death of both the said Frederick Vogel and Mary E. Vogel, the trust thereby created to cease and the title to said fee simple property to vest in the defendant Walter W. Vogel." The allega-

tion is then made that the execution of said deed was without consideration and was fraudulently procured by the said defendant without the knowledge of the complainant, "and for the express purposes of defeating" the complainant "of his right of ownership in said property." That Walter W. Vogel, at the time of the execution of said deed last mentioned, knew of the arrangement and understanding had between his parents and the complainant, and knew that the complainant "was in reality the owner of said fee simple property, notwithstanding the fact that title thereto was permitted by him to remain in the names of Frederick Vogel and Mary E. Vogel, and further knew that the title of said fee simple property * * * was upon the death of the said Frederick Vogel and Mary E. Vogel to be conveyed" to the complainant. That Frederick Vogel died in the month of June, 1914, and the said Mary E. Vogel died in the month of December, 1924, since which time the defendant has been in possession of the property.

(7) In conclusion the complainant charges and avers that the fee simple property and the assets of the drug business belong to him, and that he, therefore, is entitled to have a resulting trust declared in his favor as to the fee simple property and the assets of said business.

This was followed by a prayer asking that such a trust be declared and that a trustee be appointed to convey the fee simple property and the assets of the drug business to the complainant.

A full and complete answer was filed to the bill, in which all of the essential allegations were denied, and we need not, we think, state the denials with any particularity.

A large volume of testimony was taken, and after argument thereon the learned court below held that "a resulting trust" * * * existed in favor of the complainant, Louis Vogel, for an undivided one-half interest in the fee simple property" mentioned in the proceedings, and "an undivided one-half interest in the drug business conducted at said premises, plus one-half of all of the net profits and savings accumulated from said business whether now in the form of

152

personalty and/or realty, less one-half of such sums of money as were used or disposed of by the said Frederick Vogel and/or Mary Vogel during their lives; that the other undivided one-half interest in said property and business was also charged with the resulting trust in favor of the said Charles F. Vogel, and that, therefore, the complainant, Louis Vogel (in addition to his undivided one-half interest herein above mentioned), the defendant Walter W. Vogel, and the said Frederick G. Vogel (a brother of Louis and William Vogel) as the heirs at law and next of kin of their parents Frederick Vogel and Mary Vogel, are each entitled to an undivided one-sixth interest in said fee simple property, drug business, and net profits and savings accumulated therefrom, whether now in the form of personalty and/or realty, less one-half of such sums of money as were used or disposed of by the said Frederick and/or Mary Vogel during their lives, each share to be charged with one-third of the amount of such deduction."

It was thereupon, on the 11th day of October, 1928, adjudged, ordered and decreed by the court, that the defendant, Walter W. Vogel, convey unto Louis and Frederick G. Vogel their respective interests, as above held, in the fee simple property, and that he should account for, "pay to and transfer" to Louis and Frederick G. Vogel their respective interests, under the finding of the court, in the "net profits and savings accumulated from said business" as above set forth, and further ordered and decreed that the proceedings be referred to the auditor of the court "to state an account of the assets and liabilities of said drug business and the net profits and savings accumulated from said business," though "Walter W. Vogel shall not be required to account for any of the money as was used or disposed of by the said Frederick Vogel and Mary Vogel * * * during their lives," and leave was thereby "granted to the parties to take such further testimony before said auditor" as might be necessary for the statement of an account. And it was further adjudged, ordered and decreed that the cost of the proceedings up to the date of the decree should be paid out of the estate.

It was from that decree the appeal was taken.

The plaintiff by his bill seeks to establish a resulting trust in his favor, both as to the fee simple property at the corner of Luzerne and Fayette Streets, and the drug business there conducted.

We will state first the principles of law as to the creation of resulting trusts and second, the character of proof required to establish them. We will then consider the evidence offered in the light of those principles, and decide whether a resulting trust is thereby created in favor of the appellee as to the real and personal property mentioned.

The rule is now well established that where, upon the purchase of property, the conveyance of the legal title is taken in the name of one person, while the consideration, or a part of it, is paid by another, not in the way of a loan to the grantee, and there is no natural or moral obligation on the part of the person paying the same to provide for such grantee, as in the case of parent and child, or husband and wife, a resulting trust immediately arises from the transaction, and the person named in the conveyance will be trustee for the party from whom the consideration proceeds, unless a different intention is shown. In all species of resulting trusts, intention is an essential element, although that intention is never expressed by any words of direct creation. *Dixon v. Dixon,* 123 Md. 44; 1 *Perry on Trusts,* sec. 126; *Springer v. Springer,* 144 Md. 465; *Dorsey v. Clarke,* 4 H. & J. 551; *Witts v. Horney,* 59 Md. 586; *Keller v. Kunkel,* 46 Md. 571; *Keller v. Keller,* 45 Md. 274; *Plummer v. Jarman,* 44 Md. 639; *Green v. Drummond,* 31 Md. 81; *Bank v. Snively,* 23 Md. 261; *Brawner v. Staup,* 21 Md. 337; *Greer v. Baughman,* 13 Md. 268; *Faringer v. Ramsay,* 2 Md. 374; *Hollis v. Hollis,* 1 Md. Ch. 482; *Brooks v. Dent,* 1 Md. Ch. 527.

A person who undertakes to establish a resulting trust takes the burden of proof on himself (*R. C. L.* 26, p. 1229), and, as was said by Judge Burke in *Dixon v. Dixon, supra*: " 'Payment or advance of the purchase money by the party claiming the trust, before or at the time of the purchase,

is indispensable.' *Hays et al. v. Hollis,* 8 Gill, 357; *Holliday v. Schoop,* 4 Md. 465.; *Brawner v. Staup,* 21 Md. 328; 'It is held in all the cases that the payment, which is the foundation of the trust, must be made out by plain, direct, and unequivocal evidence.' *Keller v. Keller,* 45 Md. 269; *Thomas v. Standiford,* 49 Md. 181; *Greer v. Baughman,* 13 Md. 257.

"When the plaintiff relies upon mere parol evidence to establish the trust the 'Court should view with the greatest caution such evidence impeaching, as it does, solemn instruments, the evidence of title to land. The authorities,' say the Court in *Dorsey v. Clarke,* 4 H. & J. 557, 'are clear that the payment of the money by the *cestui que trust* must be clearly proved; otherwise, you render insecure titles depending upon deeds and other written instruments.' *Faringer v. Ramsay,* 2 Md. 365. Testimony of witnesses, based merely upon memory as to oral statements made by persons since deceased should be received with great caution, and if a long time has elapsed since the alleged statements, such testimony is held to be most unsatisfactory and inconclusive. In many cases the courts have spoken of the caution with which such evidence should be excepted as correct, and have stated the reasons therefor." See *Moran v. O'Brien,* 156 Md. 221.

The record in this case discloses that Louis Vogel and his brother Charles F. Vogel were, in the year 1899, conducting the drug business on Elliott Street, in the City of Baltimore. The business at that place was not successful, and they were there only a short time, when, on the 16th day of August, 1899, they, under a lease from the owner, moved to the premises at the corner of Luzerne and Fayette Streets in said city. These young men had practically no money and their stock of goods was small. At the time of their removal to Luzerne and Fayette Streets, both Charles F. and Louis were unmarried, and, at their request, the father and mother and their two younger brothers, Frederick G. and the appellant, Walter W. Vogel, moved in and occupied with them the premises so leased, consisting of store and dwelling attached. The father prior thereto had worked in the brick

yard in the summer and in the oyster packing house in the winter, while the mother and her sons worked in the factory. Their earnings at that time were modest and their accumulations necessarily small. Charles F. Vogel, a registered pharmacist, and his father, looked after and cared for the store. The son worked at the prescription counter, while the father sold patent medicines and cigars, served at the soda fountain, and did such things as he was able to do, and at the close of the business of each day he took the money from the register, cared for it during the night, and what was not needed in the store for the succeeding day he deposited in bank. He had, it seems, general supervision of the business. Louis Vogel was employed in the insurance business and, when not engaged in that work, would spend his time in the store and home, where he then lived. Walter W. Vogel at this time was a boy at school.

On the 15th day of May, 1902, the leasehold interest in the property at the corner of Luzerne and Fayette Streets was conveyed to the father and mother, Frederick and Mary Vogel, for the sum of $2,000. Of this sum, $336 was paid in cash and the balance, $1,664, was borrowed from a building and loan association upon a mortgage executed by Frederick and Mary Vogel. On the 20th day of October, 1905, Charles F. Vogel died, and one Charles H. Corn, a registered pharmacist, was employed to do the work that had been done by Charles, and the business went on as before. The father continued in the management of the business and in the work he had been doing before the death of Charles.

On the 16th day of November, 1906, the reversionary interest in the premises at Luzerne and Fayette Streets was conveyed by the owner to Frederick and Mary Vogel, the father and mother of the appellee. In the record is also found the following assignment of the interest of Louis, Frederick G. and Walter W. Vogel in the business to their father and mother, Frederick and Mary E. Vogel, purporting to have been signed by their said sons and attested by William Edgar Byrd:

"For valuable considerations unto us each moving from our mother and father Frederick Vogel, Sr., and Mary E. Vogel, his wife, we and each of us do hereby bargain and sell, transfer, set over and assign unto the said Frederick G. Vogel, Sr., and Mary E. Vogel, his wife, to be held by them as tenants by the entireties, all of our and each of our right, title, interest and estate in and to the chattel property (drugs, fixtures, etc., etc.) of every kind and description located in the Drug Store at the northwest corner of Fayette and Luzerne Streets in the City of Baltimore; the same including the good will of the business conducted in said store, and we and each of us do hereby release the said Frederick G. Vogel, Sr., and Mary E. Vogel, his wife, from any and all claims which we and each of us might have had or may now have as representaties of the personal estate of our late brother Charles Vogel, who together with Louis Vogel formerly conducted the drug business in said store; hereby declaring ourselves and each of us fully satisfied, contented and paid.

"As witness our hands and seals this seventh day of April, nineteen hundred and eight."

Frederick and Mary Vogel, his wife, by an assignment dated the 13th day of April, 1908, six days after the assignment heretofore mentioned from their three sons, assigned to Walter W. Vogel, after reserving a life estate to them, and the survivor of them, the personal property in the store, consisting of drugs, fixtures, etc., and the good will of the business.

At the time of the assignments mentioned, Walter was helping in the store and also attending a school of pharmacy, from which he graduated in June of the following year, and at, or about that time, Louis Vogel was married, and upon his marriage he left the home of his father and mother and moved to a house he had purchased on Monument Street, in the purchase of which his father aided him to the extent of $1,400, paid by him upon the purchase price thereof, though it is claimed by Louis that the amount paid

by his father thereon was paid from the profits of the business.

The father died in 1913, and the mother in 1924. On the 26th day of May, 1913, before the death of the father, both the father and mother executed their wills, under which, at the death of the survivor of them, Louis was to receive a legacy of $1,000 and his brother Frederick G. Vogel a legacy of $2,000 and Walter W. Vogel the rest and residue of their estate. And on the same day Frederick and Mary Vogel, his wife, conveyed to the Land Annuities Company the property on Luzerne and Fayette Streets to be held by that company in "trust for Frederick Vogel and Mary E. Vogel, his wife, so long as they and the survivor of them" should live, and, upon the death of both, the trust was to cease and the title to so much of said property as remained undisposed of was to "vest absolutely in Walter W. Vogel, his heirs and assigns forever," with the right and power reserved in the grantors "to sell, mortgage or otherwise dispose of or encumber both the life estate and the remainder estate" in the property conveyed. This property was, at the time of the death of the survivor of the grantors, undisposed of, and the appellant claims it passed under the deed to him, though, upon the advice of his counsel, he, after the death of his mother, had the property conveyed to him by the Land Annuities Company.

As already stated, the appellee claims the real estate conveyed to the father and mother was paid for by him, or with the profits from the drug business, which, as he claims, was owned by him. He testified that, when he and his brother Charles started in business, there was an agreement between them, not in writing, but oral simply, that, upon the death of either, the survivor should become the owner of the entire business. Charles thereafter died without any further agreement between them, and it is upon such oral agreement that the appellee claims that he, upon the death of Charles, took the latter's interest in said business, and, as stated by Louis, the business was with the help of his father and mother conducted by him, and, as he claims, he alone was entitled to

all the profits therefrom. We cannot agree with him in this contention, for, upon the death of Charles unmarried, without child, children or descendants, and intestate, his estate, including his interest in the business and the accrued profits therefrom, after the payment of his debts, passed under the statute of distribution then in force to the father. Therefore, the appellee was, at no time, entitled to more than one-half of the profits of the business. Charles died in 1905, and, as stated by Louis, there were no profits from the business for the first four or five years, hence there were no profits earlier than 1903 or 1904, one or two years before the death of Charles, and it was only three years thereafter before his interest in the business was assigned by him to his father and mother, and it is not shown that the money furnished him by his father, in the purchase of his home, was not fully as much as the amount he was entitled to out of the profits of the business. It may also be said that, when Louis was asked if the business was his father's and mother's or his, he said it was his, "but I loaned them the business, as long as they lived." Louis, however, denied that the assignment of the business to his father and mother was signed by him, but, upon the evidence offered, we have no difficulty in reaching the conclusion that he did sign such paper.

This assignment was prepared in the law office of Samuel K. Smith, and was, as he states, prepared at the request of Frederick and Mary Vogel, for whom he had before acted as attorney. At the time of its execution, William E. Byrd, an attorney of the Baltimore City bar, whose name appears as a witness to the execution of the assignment, was in the office of Mr. Smith. He testified that the assignment was signed by Louis, Frederick, and Walter W. Vogel, at the drug store on the corner of Luzerne and Fayette Streets; that he knew them all and knew them to be the sons of Frederick and Mary Vogel, and, as he stated, "there is no doubt in my mind that Dr. Louis Vogel, son of Frederick, signed this paper," and that his name, appearing upon it as witness, was signed by him. Walter W. Vogel likewise testified, that the assignment was signed by him and his brothers Louis.

.and Frederick G. Vogel. And in addition to this evidence, the signature of Louis to the paper appears to be identical with other signatures of his, which were admitted to have been written by him and produced for the purpose of comparison.

Louis Vogel, from the very first, had little or nothing to do with the management of the store. He, as he says, left the management of it to his father. His father, he stated, was told by him to purchase the leasehold and reversionary interest in the property, and to take the title thereto in the name of Frederick and Mary Vogel, which was done, but he knew nothing of the arrangements made for the payment of the purchase money. He did not know how much was paid in cash, or from whom the balance was borrowed, and did not know when the money borrowed was paid. He left it all to his father. He testified that, while in the insurance business, he, with money there earned, at times bought articles for the store, but he did not keep any written account of such expenditures, and was unable to give any idea as to the amount so expended.

This evidence certainly falls far short of the requirements of the law as we have stated it, and is wholly insufficient to hold that a resulting trust was thereby created in favor of the appellees as to the above mentioned real and personal property.

We will, therefore, reverse the decree appealed from and dismiss the bill.

> *Decree reversed and bill dismissed, with costs to the appellant.*