(Decided April 19th, 1864.)

GEORGE W. BRAWNER, FREDERICK CROW AND OTHERS, *vs.* PETER STAUP, DANIEL M. STAUP AND OTHERS.

RESULTING TRUST.—A resulting trust must arise at the time of the purchase of the land sought to be affected with it. It cannot arise from subsequent payments.

LAPSE OF TIME: LIMITATIONS IN EQUITY.—The bar of the statute of limitations in equity, in cases of fraud or mistake, begins to run from the time of the discovery of the fraud or mistake, and not before.

Where G. purchased land and took a bond of conveyance in his own name, and P., the father of G., and for whom the land was alleged to have been purchased, was made acquainted in 1835 with the facts of the bond of conveyance and the deed in conformity therewith having been taken in the name of his son, and in 1856 the heirs of P. filed a bill to have a resulting trust established in their favor, as against G., who had held the land adversely during that period, he, his heirs and assignees, HELD:

That the claim was barred by lapse of time.

APPEAL from the Circuit Court for Allegany County, sitting in Equity:

George Staup, the son of Peter Staup, in the year 1829, purchased from James Beatty a tract of land in Allegany County called "The Resurvey on Elk Lick," and received a bond of conveyance therefor in his own name; and afterwards, in the month of September 1836, received a deed in his own name, from said Beatty, for the same land. Peter Staup died in 1835, and on the 4th of April 1856, certain

of his heirs and the assignees of others, filed the bill in this cause claiming that the land was bought and paid for by the said Peter Staup, through his son George acting as agent, and that the said George had fraudulently made the purchase in his own name, and that a resulting trust ought to be established in their favor.

The nature and scope of the bill, and the defences taken thereto by the defendants, are stated in the opinion of this Court.

The testimony taken was very voluminous and conflicting in its character, and in view of the conclusions arrived at by the Court, need only be stated in its general character. That taken by the complainants, went to show that Peter Staup, who was a German, and could not read English, had bought the land for himself and paid for it by instalments, and had permitted George to reside upon it as his tenant. That George himself was destitute of means, and could not have procured the money to pay for the land from his own resources: and that he had made admissions and statements tending to confirm this view of the case.

The defendants introduced evidence tending to show that the purchase on the part of George Staup was a *bona fide* purchase for himself, and paid for out of his own means.

It was proved that Peter Staup found out that the papers for the land were made out in his son's name a short time before his death, which occurred in February 1836.

The Court below, (PERRY, J.,) passed a decree dismissing the bill, and the present appeal is taken from that decree. The grounds on which the action of the Court below were based, are stated in the following OPINION accompanying the decree of dismissal.

"I do not deem it necessary to advert to all the authorities cited in the argument of this cause, nor to comment particularly upon those which I esteem as controlling the result, &c. To sustain the claim of the complainants, clear and conclusive testimony is required, and when there is a doubt, uncertainty, or much conflict in the evidence, such

demands, as a general rule, are not allowed. 2 *Story's Eq.*, ·sec. 602. *Baxter & Wife, et al., vs. Sewell,* 3 *Md. Rep.,* 335. 2 *Md. Ch. Dec.,* 457. 4 *Kent's Com.,* 304. *Hollida vs. Shoop,* 4 *Md. Rep.,* 465.

"In my opinion no one can read the testimony filed in this cause without seeing in it great conflict; and even if the rule were not so strict (requiring evidence of a certain and conclusive kind) it may be doubted whether the weight of the testimony is not with the *complainants?*

"This being my view of the law and facts, I will pass a decree dismissing the bill of complaint."

The cause was argued before Bowie, C. J., and Bartol and Goldsborough, J.

·*J. H. Gordon,* for appellants :

The undertaking of George to purchase for his father, and the payment of $300 of the purchase money by the old man, is fully proved. There is a resulting trust for his benefit to that extent, at all events. And if George paid the balance of the purchase money, $81.88, and obtained the title by fraud, the most that he could claim would be to be reimbursed the sum paid. *Adams' Equity,* 34.

To avoid the effect of this proof, the defendants set up the lapse of time in bar of the relief prayed, and it remains for us to see if this fraud can be covered up and relief denied in this case upon that ground. Where are we to begin to calculate the time that is to deny us relief in this Court? Not at the date of the bond, because that only gave to George Staup an equitable claim of title as against Beatty; and Peter Staup, by paying the purchase money under the arrangement with George, had a prior and superior equity, which a Court of Equity would have enforced in preference against George and Beatty both, if a bill had been filed for that purpose during the old man's life. *Adams' Eq.,* secs. 149, 150, 151. *Smith vs. Clay,* 3 *Brown,* 639. Besides, lapse of time can only begin to run from the

time that the right of Peter Staup to have the legal title became complete against James Beatty, who held it, and as the last payment was not made to Beatty till the 12th September 1836, time could not begin to run against Peter or his heirs till that time. *Smith vs. Clay*, 3 *Brown*, 639. And no proceeding could be instituted against George to obtain the conveyance of the legal title from him, till the title was in him, by the deed of the 8th September 1836, and the fraud being then completed, the defendants can only avail themselves of lapse of time from that date. *Adams' Eq.*, sec. 176.

The evidence shows that George occupied the premises, not adversely, but as tenant of his father, from 1829 till his death in 1835, and the law would make him a tenant in common with his brothers and sisters, after the old man's death, until an ouster of his co-tenants was committed by him, or some act of adversary ownership was done with their knowledge, which would be equivalent to an ouster. *Taylor's L. & Ten.*, 105, 706, 707. *Blake vs. Foster*, 8 *Term Rep.*, 495. *Dugan vs. Gittings*, 3 *Gill*, 138, 160. *Clymer vs. Dawkins*, 3 *Howard*, 674, 689. *Vanbibber's Lessee vs. Frazier*, 17 *Md. Rep.*, 451. No act of that kind is shown until the execution of the deed by Beatty, 8th September 1836, and no notice of that is brought home to the brothers and sisters, unless the recording of the deed is held to be notice. But our Registry Laws were not intended for cases of this kind, and cannot be construed to effect these parties, or to charge them with notice. *Hill on Trus.*, 264, and note. *Hovenden vs. Ld. Annesley*, 2 *Sch. & Lef.*, 624.

If I am right in this view, there is no evidence of such notice of adversary possession until the filing of the bill in the case of No. 299, 2nd May 1837, and the service of process under it, and in that case Crow and wife and Sarah Staup were the only complainants, and there is no evidence of notice to any of the other parties now claiming in this

Brawner *vs.* Staup.

case. *Willison vs. Watkins*, 3 *Peters*, 43. *Peyton vs. Stith*, 5 *Pet.*, 484. *Bank of U. S. vs. Halstead*, 10 *Wheat.*, 54.

But, if the lapse of time is counted from the execution of the deed, then the bill in this case was filed nineteen years and seven months after that time, and nothing less than twenty years could justify the Court in refusing relief. *Dugan vs. Gittings*, 3 *Gill*, 138. *Prevost vs. Gratz*, 6 *Wheat.*, 481. *Boon vs. Chilès*, 10 *Peters*, 177. *Willison vs. Watkins*, 3 *Peters*, 43. *Miller vs. McIntyre*, 6 *Peters*, 61. *Piatt vs. Vattier*, 9 *Peters*, 413. Also *Coulson vs. Walton*, 9 *Peters*, 62. *Kane vs. Bloodgood*, 7 *Johns. Ch. Rep.*, 105. *Smith vs. Clay*, 3 *Brown's Ch. Rep.*, 641. *Bond vs. Hopkins*, 1 *Sch. & Lef.*, 429. *Hovenden vs. Ld. Annesley*, 2 *Sch. & Lef.*, 608. *Hill on Trustees*, 264, 265, 266. 2 *Story's Eq. Jur.*, secs. 1520 and 1521. *Michaud vs. Girod*, 4 *Howard*, 560, 561.

*Thomas S. Alexander* and *Thomas J. McKaig*, for the appellees:

1st. The lapse of time in this case being a bar to a recovery at law with the legal title, a Court of Equity will not relieve the complainants. The adverse possession in this case is a bar in equity as well as in law; 2 *Story's Eq. Jur.*, sec. 1520, 1520 *a.*; 1521, 1521 *a.*, and note 2; 1520, to note 3, on page 983 to 1520, and 1520 *a.*, where all the authorities are cited; 5*th Edition of Story's Eq. Jur.*; *McKnight vs. Taylor*, 1 *Howard Sup. C. R.*, 161; *Piatt vs. Vattier*, 9 *Peters S. C.* 405; *Kane vs. Bloodgood*, 7 *John. Ch. R.*, 90. And in this case the *prima facie* inference is that if Peter paid money in the purchase, it was by way of advancement for his son in whose name the title was taken. 2 *Story's Eq. Jur.*, secs. 1202, 1203, (7*th Ed.*)

2nd. The consideration expressed in the bond of conveyance, is stated to be paid by George Staup, and the sale made to him on his credit, and the deed made to him; and there is nothing in the bonds and notes for deferred payments, nor in the deed, to show that the purchase money

was paid or purchase was made by Peter's money or for him; parol proof cannot be admitted after the death of George Staup to prove a resulting trust. 2 *Atkins.*, 150, note 2; 2 *Story's Eq. Jur.*, note 1 to *sec.* 1200; *Hollida vs. Shoop*, 3 *Md. Rep.*, 474; *Jackson vs. Speed*, 3 *Marshall*, 57.

3rd. Admitting the parol evidence. The defendants say the testimony is not sufficient to establish the allegations of the bill to sustain this case. The allegations of the bill must be proved by "evidence of the clearest and most indisputable character," whereas, the only testimony offered by complainants of the fact that Peter Staup paid any money before or at the time of the purchase, is the testimony of Catharine Staup an old woman of eighty to eighty-six years, childish, and in her dotage. All the other witnesses who speak to the fact of Peter Staup's furnishing money to George when he went to Baltimore to purchase, speak only of reputed conversations of George made after the purchase, and incapable of contradiction. And even these conversations are detailed by interested witnesses, who have placed themselves in such position that no witness so situated ought to expect to be believed.

4th. The defendants will contend, that if the complainants' witnesses were altogether credible their testimony is not such as would induce a Court of Equity to give relief, in opposition to the "solemnity and certainty of written documents;" (see *Hollida vs. Shoop*, 4 *Md. Rep.*, 467,) without regard to the thirty-two years possession under the purchase from Beall, and afterwards from Beatty. *Faringer vs. Ramsay*, 2 *Md. Rep.*, 375. *Greer vs. Baughman*, 13 *Md. Rep.*, 157.

5th. The defendants will also contend, that the fact that Crow and wife and Sarah, now Sarah Shoemaker, filed a bill in 1837, making the same allegations against George Staup, Armel and wife and Lint and wife, (who even then refused to join,) and after George Staup had answered under oath denying the charges, and they had taken all the

testimony they could get, dismissed the bill, with the lapse of time since, is alone sufficient answer to this whole bill,—a *stale* demand; *Delane vs. Delane,* 4 *Bro. P. C.,* 258, referred to by Chancellor Kent in the case of *Boyd vs. Mc-Lean,* 1 *Johns. Ch. Rep.,* 590; *Clabaugh & Sanders vs. Byerly,* 7 *Gill,* 354, where by a delay of seventeen months the party was held to have lost his equity; *Mason vs. Martin & Kemp,* 4 *Md. Rep.,* 124, where the question is discussed whether two years delay was not fatal.

6th. That the money, if any, furnished by Peter Staup to George, was a loan to pay the first and second deferred payments, for which George built him a house and supported him during his life, and his mother, until she mysteriously disappeared in somebody's sleigh.

7th. That this title of Jerry Cowles and the Midland Coal Company, and Varnum and Aspinwall, who claim under Cowles, are purchasers without notice of the claim now set up, and cannot now be disturbed in their purchase. 71 *Law Lib.,* 144, in the note to *Le Neve vs. Le Neve,* where all the cases are referred to.

8th. Where there is a resulting trust under a conveyance, it must arise at the time of the purchase; in this case when the bond was executed by Beatty, November 4th, 1829; the trust cannot arise from subsequent payments. *Rider vs. Kidder,* 10 *Ves.,* 360, note "a." *Rogers vs. Murray,* 3 *Paige,* 390. *Buck vs. Pike,* 2 *Fairf.,* 9. *Steere vs. Steere,* 5 *John. Ch. Rep.,* 1. *Botsford vs. Burr,* 2 *John. Ch. Rep.,* 409. *Hoxie vs. Carr,* 1 *Sumner,* 188. *Seward vs. Jackson,* 8 *Cowen,* 406. 4 *Kent,* (5th Ed.,) 305, 306. *Hollida vs. Shoop,* 4 *Md. Rep.,* 467. 2 *Sugden on Vendors,* 138. *Dorsey vs. Clark,* 4 *H. & J.,* 537.

9th. The testimony of George's sister, that he promised to divide with them, buy them a farm, &c., is not a trust and cannot be enforced in equity. *American Law Register,* vol. 6, No. 1, Nov. 1857.

10. Catharine Staup says, when Peter found out how the papers were, he would pay no more, &c.; limitations will run from this date, by complainants own showing.

GOLDSBOROUGH, J., delivered the opinion of this Court:

The appellants in their bill of complaint allege, that in November 1829, Peter Staup, the father, employed his son George Staup to purchase from a certain James Beatty, of the City of Baltimore, the lands in controversy. That the father furnished the purchase money to George, and it was understood and agreed between the father and son, that the title papers should be executed to the said Peter and in his name. But George Staup fraudulently contriving and intending to cheat and defraud his father, procured the bond of conveyance mentioned in the record, and the deed subsequently made, to be executed and delivered to him, George, as grantee therein.

The appellants therefore charge, that George received and held the legal title as trustee for his father and his heirs, and that the same ought to be so decreed.

It is thus manifest from these allegations, that the appellants seek to establish a case of resulting trust in favor of Peter Staup and his heirs, and the father having died since the execution and delivery of the bond of conveyance from Beatty to George Staup, whatever rights the father had, have devolved upon the appellants and those claiming under them.

The appellees on their part, and in defence of their rights, rely on the facts that George Staup and his brother John, in 1824, purchased the lands in dispute from a certain Gustavus Beall, and several years before George made the purchase from Beatty, paid part of the purchase money to Beall and took possession of the property, and that he, George, expended some $800 or $900 in clearing the land and putting improvements upon it. But discovering that Beall's title was defective, John abandoned all claim to the property and removed to the west, where he died.

The appellees utterly deny that George Staup purchased the land from Beatty as agent of his father, or that the father furnished the money to make the purchase.

The appellees further say, that the father did not in his lifetime prosecute any claim to the land, or claim any title or interest therein, although he lived for six years after George had purchased from Beatty, and lived part of the time with George, and was maintained by him.

That George Staup not only made the improvements mentioned above, but possessed and occupied the land as his own from the date of his purchase from Beall, and thereafter under his purchase from Beatty, in 1829, to the time of his death, in 1853. That the appellants filed a bill of complaint in Allegany County Court, in 1837, alleging substantially the same charges as are contained in the present bill. That upon the answer of George being filed, testimony was taken; the suit continued until April term, 1841, when it was dismissed " by direction of complainant's attorney."

Mary Ann Staup, widow of George Staup, and one of the appellees in this case, relies in her answer upon the statute of limitations, that George and those claiming under him, held the land by adverse possession for more than twenty years.

Though the appellees also rely on the statute of frauds in their answer, we do not understand the appellants to contend that they can set up a parol agreement contradicting the bond of conveyance and deed from Beatty, but they insist that the facts and circumstances developed in this case show that George Staup purchased the property as trustee of his father, and with his money, thus creating a resulting trust which is susceptible of proof by parol.

Having thus stated the allegations and defence of the respective parties, we shall proceed to consider the alleged resulting trust in view of the evidence and the law applicable thereto. It may be proper to state that such a trust must arise at the time of the purchase. It cannot arise

from subsequent payments. See 4 *Md. Rep.*, 465. 2 *Johns. Ch. Rep.*, 409. We might confine ourselves to this point of the case, and applying the rule so well established by the decisions of this Court, "that payment of the money by the *cestui que trust* must be clearly proved, otherwise you render insecure titles depending on deeds and other written documents." 4 *H. & J.*, 557.

And again, " the rule which allows of the introduction of parol evidence in cases of resulting trusts, requires that Courts should view with the greatest caution such evidence, impeaching, as it does, solemn instruments—the evidence of title to lands." 2 *Md. Rep.*, 375. 13 *Md. Rep.*, 268. Regulating our opinion by these authorities, and applying the law to the circumstances relied on to establish the important fact, that the first payment on the purchase from Beatty was made by Peter Staup, George acting as his agent merely, we think the evidence falls far short of any such conclusion, especially as there is evidence in the cause that George Staup had the means by which he could make the first payment. In our opinion, it would be difficult to imagine a case in which the law would be so wholly ungratified. But there is another view of this case, which is conclusive of the correctness of the decree. The lapse of time which occurred from the period when Peter Staup became acquainted with the fact that George Staup had taken the bond of conveyance in his own name, as testified to by the appellant's own witnesses, to the time of instituting this suit, was more than twenty years.

In 2 *Story's Equity*, sec. 1521, *a*, it is said, in speaking of the bar of the statute in equity, "that in cases of fraud or mistake, it begins to run from the time of the discovery of such fraud or mistake, and not before." This rule was recognized by Baron Alderson, in *Brookshank vs. Smith*, 2 *Younge & Coll.*, 58, and is no doubt the correct rule in such cases.

The proof shows that the alleged fraud was known to Peter Staup sometime before his death, which occurred in

1835, and this bill was not filed until April 1856. During all that period George Staup continued in possession of the land as exclusive owner until his death; and afterwards the same went into the possession of his widow and heirs at law, who have continued to hold adversely. That the possession has been adverse, is shown by the proceedings instituted by the heirs at law of Peter Staup, in 1837, which were abandoned.

It would be inequitable and contrary to the spirit and purpose of the statute, to grant relief to parties after such *laches* and delay as have occurred in this case. In our opinion, the complainant's claim would be barred by lapse of time, even if the allegations of the bill were better supported by proof than they have been by the testimony contained in the record, which, as we have already said, is unsatisfactory and inconclusive.

A decree will be signed affirming the decree of the Circuit Court, with costs.

*Decree affirmed.*

(Decided April 21st, 1864.)