The Cecil Bank *vs.* Adam Snively, Administrator of Law-
rence Snively, Claimant of Property Attached of James
F. Lee and Thomas J. Welby.

Res Inter Alios Acta: Evidence: Fraud: Province of Court and
Jury.—The trustees of L. and W., against whom C. held a judgment, sold
certain leasehold estate of L. and W. to L. S. The judgment creditor is-
sued an attachment upon its judgment against the property so sold, claim-
ing that the purchase was, in fact, made for L. & W., who had an attach-
able interest in it. The purchaser appeared as claimant of the property
attached, and gave in evidence at the trial a lease of the property made by
him. On objection to the admissibility of this lease in evidence—Held:

1st. That as one of the grounds on which the claim of L. S. to the property
was assailed by the plaintiff, was that his purchase of it was a mere color-
able and fraudulent pretence to cover up and conceal from the creditors of
L. and W. their actual ownership, the lease was admissible to rebut the
charge of fraud, and as evidence of an act of ownership exercised over the
property by L. S.

2nd. That the question of the fraud or *bona fides* of the lease, was exclusively
for the jury to decide, upon all the proof; but there was no error in allow-
ing said lease to be given in evidence to the jury.

3rd. That for the like purpose, of rebutting the charge of fraud, evidence of
the source whence the lessee of the property was to obtain the means of
working the property, was properly admitted, leaving the question of fraud
or *bona fides* to be decided by the jury.

Resulting Trust: Statute of Frauds.—Where one party purchases an
estate and pays the money, but takes a deed in the name of another, there
a trust results by construction of law to the man who paid the money; and
if only a part of the purchase money is paid by a third party, there will be
a resulting trust in his favor *pro tanto.*

———: ———: Attachment.—Where it appeared on the trial, that at the time
of the purchase, the property, though nominally sold to L. S., was in fact
purchased for L. and W., and the purchase money, so far as it was paid at
the time, was paid by them; and it further appeared that the instalments
subsequently falling due, were also paid by them,—Held:

1st. That these facts, if found by the jury, established the trust in favor of
L. and W., and showed that they had an attachable interest in the proper-
ty to the extent of the payments by them.

2nd. That their right arose, not from a parol promise by L. S., or his mere
purpose to allow them the benefit of his purchase, but from the payment
by them of the purchase money.

Practice: Instructions to the Jury.—Where the hypothesis of a prayer
is contrary to the proof in the cause, it is error to grant it.

Evidence, Admissibility of.—Where the notes mentioned in a memoran-

dum were identified as the notes given for the purchase money of the property, it was competent for a witness, without producing the originals, to state that the bankers with whom the notes were deposited, had sent them to their correspondents in Philadelphia for collection, and that the amount thereof was received by said bankers from their correspondents, and the time of such receipt.

——: PAROL EVIDENCE.—This is not giving parol evidence of the contents of written papers, but is evidence of a distinct substantive fact, clearly admissible by the rules of law.

APPEAL from the Superior Court of Baltimore city.

The facts of this case are sufficiently stated in the opinion of the Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Geo. H. Williams,* for the appellant :

The appellant will contend, as to the first and second bills of exceptions : That as to the evidence therein admitted, it is irrelevant, and *res inter alios acta.* That the same objections apply to the evidence admitted in the fourth bill of exceptions with the additional objection, that the notes specified in the memorandum were not produced, and no sufficient reasons given for their non-production, nor of their payment; nor, if paid, by whom they were paid. That as to the second exception, the plaintiff's prayers should have been g: .ted, because "the clear result," said Lord Chief Baron Eyre, "of all the cases without a single exception, is that the trust of a legal estate, whether taken in the names of the purchaser or others jointly, or in the names of others without that of a purchaser, whether in one name or several, results to the man who advances the purchase money." *Lewin on Trusts,* 97 *Law Lib.,* 216. 2 *Story's Eq.,* sec. 1201. *Wray vs. Steele,* 2 *Ves. & B.,* 389. *Finch vs. Finch,* 15 *Ves.,* 50. *Hays, et al., vs. Hollis,* 8 *Gill,* 358. *Mutual Ins. Co. vs. Deale,* 18 *Md. Rep.,* 45. *Dorsey vs. Clarke,* 4 *H. & J.,* 556.

In this case, the uncontradicted evidence is, that Lee and Welby had paid every dollar of the purchase money, in fact, for the whole, except the one note given for the last payment, and which had not matured. And where part of the purchase money is paid only, the trust will arise to the extent of the payment *pro tanto.* *Ryall vs. Ryall,* 1 *Atkins,* 59 and 60. *Brothers vs. Porter,* 6 *B. Monroe,* (*Ky.,*) 106. *Pierce vs. Pierce,* 7 *B. Monroe,* (*Ky.,*) 433. 4 *Kent,* (*Margl.,*) 306. 2 *Washburne on Real Property,* 174, *Purdy vs. Purdy,* 3 *Md. Ch. Dec.,* 547. *Shoemaker vs. Smith,* 11 *Humphrey,* (*Tenn.,*) 82. *Hill on Trustees,* (*Margl.,*) 92. *Buck vs. Swazey,* 35 *Me. Rep.,* 48. *Lane vs. Deghton, Amb.,* 409.

And so there will be a resulting trust where the nominal purchaser gives his own security for the purchase, even in the case of a mortgage. *Harden vs. Harden,* 2 *Sandford Chy. Rep.,* 17. And where the purchase is a fraud on creditors, the creditor is let in. *Stileman vs. Ashdown,* 2 *Atk.,* 477. *Reddington vs. Reddington,* 3 *Ridgman's P. Cases,* 176.

In this case, the fraud of Snively, and Lee and Welby, was not only proved, but no effort was attempted to disprove it, and an equitable interest in land is liable to attachment. See, *Campbell vs. Morris,* 3 *H. & McH.,* 535. *Ford vs. Philpot,* 5 *H. & J.,* 312.

And the appellant will also further contend, that the claimant's first prayer should not have been granted, because :

1st. The prayer was calculated to mislead the jury, in that it does not specify whether the fairness and *bona fides* of said sale, was to be that of the vendors, the trustees, or of the purchaser, or both; the fairness and *bona fides* of the sale, so far as the trustees were concerned, was not at all impeached, nor could their honesty in the sale avail to protect the fraud designed on the purchaser.

2nd. There was no evidence to sustain so much of the prayer as related to verbal or any other promises to hold

the property as a security for the return of money advanced by claimant's intestate, in the purchase of the property, and to give them, Lee and Welby, the benefit of the amount of sale over such advances,—the evidence being, without attempt, a contradiction, that Lee and Welby alone advanced the money, and that neither Lawrence or Adam Snively paid or advanced one cent; and condemnation and sale, under the attachment, was only sought of such interest as Lee and Welby might happen to have therein; and the purchaser under the condemnation, would have either paid the last note, or repaid Snively therefor, if he had been obliged to pay it.

And the second prayer should not have been granted for the same reasons, there being no evidence of any advances of money as specified in said prayer, and because the law therein assumed is at variance with that of the plaintiff's prayers, and erroneous.

*William Price* and *John P. Poe*, for the appellee:

Upon the whole case, it will be contended for the appellee, that the ruling of the Court below in the first exception was proper.

The plaintiff had given evidence of the declarations of Lawrence Snively in relation to his ownership of and interest in said mill property; and the defendant, to rebut the testimony thus offered, and with a view of showing that he had acted as the owner thereof, produced the lease to Samuel Adams set out in the exception. It is not easy to perceive the grounds of the objection to this paper. It was certainly relevant, and material proof. The plaintiff read to the jury the contract between the trustees and said Lawrence Snively, dated 21st January 1859, and the lease offered by defendant, at least, tended to prove an act of ownership over the property the following August,—the one paper shewed the inception of the appellee's title, the other shewed his disposition of it after he had taken possession. If this were not evidence, it would be difficult to say how any landlord could prove possession and ownership.

The same observations apply 'equally well to the ruling of the Court below in the third exception. The testimony there was offered for the purpose of 'showing the means resorted to by the lessee, Samuel Adams, to carry on said Telegraph Mills, and obviously supported the plea interposed by the claimant, that he, and not Lee & Welby, was the owner of the property attached. The objection, that to admit the testimony set out in these two exceptions, would be to permit a party to give in his own declarations and acts in support of his pretensions, is not tenable, for the reason, that those acts and declarations are the best, and indeed the only mode in a case of this description, to prove the question at issue. The intention of the parties can only be arrived at by considering their acts and declarations, and these, *ante litem motam*, are clearly admissible.

2nd. The ruling of the Court in the plaintiff's second exception was also wholly unobjectionable. The main question in the cause is here presented, and is simply whether, under the facts and circumstances detailed in the testimony, and for the most part set out in the prayers, said Lee & Welby had such an interest in said property as could be reached by the process of attachment. For the appellee, it will be contended, that there was no such attachable interest; and the plaintiff's prayers were properly rejected, even conceding, *ex gratia*, that their form was free from objection, which, however, on examination, will be found not to be the case. The prayers presented by the appellee and granted by the Court, present the true law applicable to such a case.

In attachments the test of the liability of the property attached to a judgment of condemnation is, the interest and title which the defendant has in it. He must have either an equitable or a legal right to the property. If he has neither,—if his interest depends upon a mere gratuitous act of the party sought to be made garnishee, and whose action he can neither control nor arrest, there can be, of course, no attachable interest. Here the pretended interest.

of Lee & Welby in the real estate attached, rested in parol merely, and was obviously not capable of enforcement by them; and even if the jury were to believe that the said Lawrence Snively had verbally agreed to hold the property as security for the payment by Lee & Welby, of the unpaid purchase money, with a view of befriending them, and suffering the purchase to enure to their benefit, so long as there remained any portion of such credit payments outstanding, it can hardly be pretended, that there existed any resulting trust in their favor. *Steere vs. Steere,* 5 *Johns. Ch. Rep.,* 1. *Fowke vs. Slaughter,* 3 *A. K. Marsh,* 971. *Dorsey vs. Clarke,* 4 *H. & J.,* 556. *White vs. Carpenter,* 2 *Paige Ch.,* 238. *Rogers vs. Murray,* 3 *Paige Ch.,* 390. *Gee vs. Gee,* 2 *Sneed.,* 403. *Wilson vs. Russell,* 13 *Md. Rep.,* 495. *Buck vs. Swazey,* 35 *Me. Rep.,* 41, *Kellum vs. Smith,* 33 *Penn. St. Rep.,* 164. *Barnet vs. Daugherty,* 32 *Penn. St. Rep.,* 372.

Here the whole evidence of the appellant might be admitted, and yet there would be no resulting trust which would take the case out of the Statute of Frauds, and enable the appellant to recover. The alleged verbal promise of the appellee's intestate was not binding, and could not be enforced.

There was therefore no interest, legal or equitable, of Lee & Welby, in the property attached, which made it liable to a judgment of condemnation.

3rd. The ruling of the Court below in the fourth exception, was equally free from error.

The object of the testimony of Mr. Trull, taken in connection with that of Mr. Price, was to identify the notes given for the deferred payments, and no rule of evidence was violated in permitting their existence and payment to be proved in the mode pursued.

BARTOL, J., delivered the opinion of this Court:

The appellant, on the 14th February 1859, recovered a judgment in the Superior Court of Baltimore city, against

Lee and Welby, for $3,026.00 and costs, and on the 22nd December 1859, sued out an attachment thereon, which was laid on certain property in Baltimore city, known as the "Tea and Mills." Lawrence Snively, the intestate of the appellee, intervened as claimant of the property, and having subsequently died, his administrator appeared, and was made party claimant in his stead. The verdict and judgment were in favor of the claimant.

At the trial of the cause, *four* bills of exceptions were taken; the *first, third* and *fourth* to the admission of certain evidence objected to by the appellant; and the *second* to the ruling of the Superior Court upon the prayers.

The plaintiff produced in evidence the record of the judgment on which the attachment was issued, the deed of trust from Lee and Welby (the defendants in the judgment) to Price and Ridgway, and also the contract between Price and Ridgway, the trustees, and Lawrence Snively, made on the 2nd March 1859, whereby it appeared that the trustees had, on the 21st January 1859, sold to Lawrence Snively the property in question, for $4,980, payable one-fifth cash, and four-fifths in instalments of $996, in six, twelve, eighteen and twenty-four months, with interest. The cash instalment was paid, and the notes of Lawrence Snively were accepted to secure the deferred payments.

Proof was then offered of the declarations of Lawrence Snively, to the effect that he was only nominally the purchaser, the purchase being in fact made for the use and benefit of Lee and Welby; that the payments which had been made of the purchase money, so far as it had been paid, were made by Lee and Welby, he, Lawrence Snively, claiming no interest in the property, and holding the contract only for the benefit of Lee and Welby, and as security for the unpaid balance of the purchase money.

*First bill of Exceptions.*—The claimant then offered in evidence a written lease, made by Lawrence Snively, at Philadelphia, on the 1st day of August 1859, to Samuel Adams, demising the property to Adams for the term of

three years, at the yearly rent of $2,000. This evidence being objected to by the plaintiff as inadmissible, its admission by the Court forms the subject of the first bill of exceptions.

The appellant, in support of this exception, has argued in this Court that the lease is *res inter alios;* and further, that to receive it in evidence, would be to admit the mere declarations of a party to be offered in his favor, and thus allow him to manufacture evidence for himself.

We do not assent to the force of these objections. One of the grounds on which the claim of Lawrence Snively to the property was assailed by the plaintiff, was that his purchase of it was a mere colorable and fraudulent pretence to cover up and conceal from the creditors of Lee and Welby their actual ownership; the lease was admissible to rebut the charge of fraud, and as evidence of an act of ownership exercised over the property by L. Snively. A point very much like this was settled in the case of *Waters' Lessee vs. Riggin,* 19 *Md. Rep.*, 536. The question of the fraud or *bona fides* of the lease was exclusively for the jury to decide upon all the proof; but, in our opinion, there was no error in allowing it to be given in evidence to the jury.

*The third Exception.*—For the same reasons we affirm the ruling of the Superior Court upon the third exception. The contract made with Adams, the lessee, testified to by Wheatley, was admissible evidence; leaving the question of fraud or *bona fides* to be decided by the jury.

*Second bill of Exceptions.*—Upon the state of facts disclosed in the first and second bills of exceptions, which we have already briefly stated, the question arises, whether the defendants, Lee and Welby, had an attachable interest in the property, or, in other words, whether the evidence is sufficient in law to establish a trust in their favor? This question is raised by the prayers.

The whole difficulty, in this part of the case, grows out of the provisions of the statute of frauds, which require declarations and creations of trusts in lands to be manifested

and proved by writing. But trusts which arise by implication or construction of law, are, by the words of the statute, expressly excepted from its operation, and may be proved by parol. "Such a trust arises where one party purchases an estate and pays the money, but takes a deed in the name of another; there a trust results by construction of law to · the man who paid the money. The payment of the money is the foundation of the trust." *Dorsey vs. Clarke*, 4 *H. & J.*, 556. 2 *Story's Eq. Jur.*, sec. 1201. "And if only a part of the purchase money is paid by a third party, there will be a resulting trust in his favor *pro tanto.*" This last proposition is laid down by Chancellor JOHNSON, in *Purdy vs. Purdy*, 3 *Md. Ch. Dec.*, 547, and is supported by authority. In the same case the Chancellor says: "But then it seems to be indispensable to the creation of such a trust, that the money should be paid *at the time,*" and cites 4 *Kent's Com.*, 305, 306. It is well settled that such trusts cannot arise from parol declarations *ex post facto. Cramer vs. Shriver*, 18 *Md. Rep.*, 146.

These are the general principles governing the question of constructive or resulting trusts; they may be more clearly understood by presenting some cases which, while they nearly resemble cases of constructive trusts, are yet not within the principles stated.

If a party who buys land agrees by parol to hold it for another, or to give that other the benefit of the purchase, upon the payment by him of the purchase money, such a conventional trust could not be enforced. It would be within the statute, and could be evidenced only by writing. Such was the case of *Dorsey vs. Clarke*, 4 *H. & J.*, 556. "So if a man employ an agent, by parol, to buy an estate, who buys it accordingly, and no part of the consideration is paid by the principal, and there is no written agreement between the parties, he cannot compel the agent to convey the estate to him, as that would be in the teeth of the statute," (by Judge DORSEY, in *Dorsey vs. Clarke*.) See *Bartlett vs. Pickersgill*, 4 *East.*, 577, *note*. This principle was

decided in the case of *Fowke, et al.,* vs. *Slaughter,* 3 *A. K, Marshall,* 971, cited by appellee.

The question here presented is, to which class the case before us belongs? By reference to the proof, it appears that at the time of the purchase, the property, though nominally sold to Lawrence Snively, was in fact purchased for Lee and Welby, and the purchase money, so far as it was paid at the time, was paid by them; and it further appears that the instalments subsequently falling due, were also paid by them, Snively having stated to the witnesses, as late as March 1860, or as late as the time of his death, (which occurred after the May Term of that year,) that all the payments to that time had been made by Lee and Welby. These facts, if found by the jury, established the trust in favor of Lee and Welby, and showed that they had an attachable interest in the property, to the extent of the payments by them; and therefore the prayers of the plaintiff ought to have been granted.

The propositions of law contained in the defendant's prayers, when considered in themselves, are, in our opinion, correct. Undoubtedly, upon the facts therein stated, no constructive trust would arise; but the error in granting them consisted in a misconstruction of the proof. The rights of Lee and Welby did not rest upon "a parol promise by Lawrence Snively, or his mere purpose to give them the benefit of all the property would bring in the market, over and above the purchase money advanced by him," as stated in the prayers. Their right arose from the payment by them of the purchase money, the evidence of which is uncontradicted, and was to the extent of such payment, notwithstanding the purchase was made in the name of Lawrence Snively. The hypothesis of the appellee's prayers was contrary to the proof in the cause, and it was error, therefore, to grant them.

*Fourth Exception.*—The objection taken by the appellant to the evidence contained in the fourth bill of exceptions, is

based upon the failure to produce the notes spoken of by the witness, Trull.

This is not a valid objection. The fact to be proved by the witness, was that the notes given by L. Snively for the property, had been paid to the banking house of Johnson Bros., of which he was clerk. The notes described on the memorandum, were identified by the testimony of Th. Price, one of the trustees, and it was competent for the witness, without producing the originals, to state that they were sent to their correspondents, Drexel & Co., of Philadelphia, for collection, and that the amount thereof was received from Drexel & Co. by Johnson Bros., and when received. This is not giving parol evidence of the contents of written papers, but is evidence of a distinct substantive fact, clearly admissible by the rules of law. See the decision on the 2nd exception in *Cramer vs. Shriver*, 18 *Md. Rep.*, 146, 147.

We affirm the ruling of the Superior Court upon the 1st, 3rd and 4th exceptions, and reverse on the 2nd exception, and award *procedendo*.

*Judgment reversed and procedendo awarded.*

(Decided July 6th, 1865.)