Brennan *vs.* Durkin.

(Decided 7th December, 1892.)

---

EDWARD BRENNAN and ANNE BRENNAN, his Wife *vs.* PATRICK DURKIN, and others.

*Resulting trust—Payment of Purchase money.*

The sons of an intestate claimed, as against their sister, to have bought and paid for certain real estate of which their father died seized, and that a trust therefore resulted to them. It appeared in evidence that the sons worked in the mines and brought their wages home to their mother, who expended it according to her judgment; that the mother, with the daughter, until the marriage of the latter, and afterwards the mother alone, with the occasional aid of a hired girl, did the cooking and washing of the family; and that the father cultivated the garden, and attended to such work in the family as required a man to perform. The mother and daughter began the negotiation for the purchase of the property; and the matter was finally closed by the mother, and the deed was made out to the father with the consent of the sons. It was not shown that the father possessed no means at the time of the purchase. Less than two years before the purchase, one of the sons sent passage tickets to bring his father and mother, and two brothers, to this country, and

the daughter sent a hundred dollars. The title of the father to the property was not questioned for sixteen years after the purchase. HELD:

That no trust resulted to the sons, and the proceeds of the sale of the property, after the payment of costs and expenses, should be distributed to the four sons and to the daughter in equal proportions.

APPEAL from the Circuit Court for Alleghany County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, and McSHERRY, J.

*D. James Blackiston,* and *Benj. A. Richmond,* for the appellants.

*Ferdinand Williams,* for the appellees.

PAGE, J., delivered the opinion of the Court.

The appellants in this case, filed their bill in the Circuit Court for Alleghany County, sitting in equity, for a sale of the real estate, of which John Durkin died seized. The appellees, who were defendants below, by their answer, allege, that the property, which consisted of one lot and improvements situated in the village of Lonaconing, was bought and paid for by them, and, in consequence, the equitable title thereto is in them. Subsequently, the parties agreed to the passage of a decree for a sale, reserving all questions as to their rights, to be adjudicated in the audit distributing the proceeds of the sale. Accordingly a decree was passed, appointing a trustee to make the sale, which was afterwards made, and finally ratified by the Court. The auditor, to whom the case was then referred, made an audit,

in which, after allowing the costs, trustee's commissions, and expenses of the sale, one-fifth part of the residue was awarded to each of the five children of the deceased.

The defendants excepted to the ratification of this audit, "because the allowance to the plaintiff, Anne Brennan * * is contrary to the right of the defendants * * inasmuch as the property sold was bought and paid for by them, and the house thereon was built with their money, a *trust thereby* resulting in their favor." The Court sustained the exception, and remanded the account to the auditor, with directions to disallow the distribution to Anne Brennan, and to make distribution of the funds after deducting costs, &c. to Patrick, Thomas, Frank and John Durkin in equal shares.

The law relating to resulting trusts in Maryland, has been placed by numerous decisions of this Court beyond controversy. In the case of *Witts vs. Horney,* 59 *Md.,* 585, Judge MILLER, in delivering the opinion of the Court said: "Where one party purchases an estate, and pays the money, and the deed is taken in the name of another, a trust results by construction of law, to the party who paid the money, and such payment may be proved by parol; but in all such cases, the proof of payment by the *cestuis que trust* must *be clear, direct and explicit.* The strictness of proof is required, because of the danger of rendering titles depending upon deeds and other written instruments insecure."

In this case the real estate in question was conveyed by John Winn and wife on the 29th day of January, 1875, to John Durkin, the deceased, for a consideration of four hundred and fifty dollars, the receipt of which is acknowledged in the deed. It also appears by the evidence, taken by the parties while the case was before the auditor, that Patrick Durkin with his sister, Anne (now Mrs. Brennan) came to this country in 1870; and in 1871, was followed by his brother Thomas Durkin.

Brennan *vs.* Durkin.

In 1872, desiring to have. the rest of the family with them, Patrick and his sister Anne, provided the means for them to come; Patrick sending them the tickets for their passage, and Anne, one hundred dollars. In May of that year, John Durkin, Sr. and his wife, accompanied by his sons, Frank and John, both minors, arrived; and the whole family thus re-united, lived together until the complainant Anne was married in October of the same year, when she went off to reside with her husband. The other members of the family kept house together until the death of the father in 1877, and afterwards the four boys lived with their mother until her death in 1891. At the time of their arrival in this country, John Durkin, the son, was fourteen years of age and his brother Frank was sixteen. The arrangements made for the support of the family, appear to have involved the united labors of the entire family. The mother and Anne, until the marriage of the latter, and afterwards, the mother alone, with the occasional aid of a hired girl, did the house-work, such as cooking, washing, &c.; the father cultivated the garden and attended to such work in the family as required a man to perform it; and the boys worked in the mines, and brought home their wages to their mother, who expended it according to her own judgment.

In respect to these sums thus furnished by the boys, there appears to have been no special agreement. Thomas Durkin in his testimony says, "on pay-days we gave her *our money and she paid it out*" * * "she used it in household expenses." Patrick states: "when John and I worked together * * I used to get money and take it home to my mother." Mrs. Brennan testifies, that "the wages that my four brothers earned at Midland and gave to my mother, she considered that her own, when they gave it to her;" and Edward Brennan, on being asked, if he did not know that the boys gave their

wages to her, answered, "I don't know anything about that, miners generally give their wages to their wives or mother." It was strenuously contended at the argument, that, under these circumstances, the mother acquired a title by gift to the funds thus handed to her, but in the view we take of this case, it is not necessary to express an opinion on this point. After the family had been thus living and working together less than two years, the mother and her daughter, Anne, began bargaining with John Winn. Except that Patrick says, his mother asked the consent of the boys, it is not shown that they had any part in the negotiations that led to the purchase.

The matter was finally closed by Mrs. Durkin herself. She directed Edward Brennan to buy the lot for her, and after he had done so, she and her husband came down and paid for it. Thomas Durkin testifies that his mother asked the boys whose name was to go on the deed, and they replied that "being he was *our father his name could go on it.*" Thus it seems the purchase was actually made by Mrs. Durkin, and the deed was made out to John Durkin, by the consent, at least, of the parties, who are now setting up the claim that the property was purchased by them and paid for with their money. Even if it could be assumed that the money was saved from their earnings, and applied by Mrs. Durkin to the purchase, the Court would be unable to find a resulting trust in favor of the two youngest sons, John and Frank. At the time of the purchase both were minors living with their father, and under his control. We have been able to find no evidence in the cause tending to prove he had emancipated them.

The sums earned by John and Frank up to the date of the deed, was the property of the father, and no resulting trust could arise in their favor, in consequence of its application by either the father or the mother. "The whole foundation of the trust is the payment of the

money, and that must be clearly proved. If, therefore, the party who sets up a resulting trust made no payment, he cannot be permitted to show by parol proof that the purchase was made for his benefit, or, on his account. This would be to overturn the Statute of Frauds, and so it was ruled by Lord KEEPER HENLEY in the case of *Bartlett vs. Pickersgill.''* (*4 East,* 577, *note.*) *Botsford vs. Burr,* 2 *John. Chan.,* 409; *Cecil Bank vs. Snively, Adm'r,* 23 *Md.,* 261; *Brawner vs. Staup,* 21 *Md.,* 337.

But we do not find in this case such clear, direct and explicit proof, as the law demands, to justify such an assumption. It was insisted at the argument, that the money must have been the boys', because they only had the means of earning it. But it is by no means certain that John Durkin was not possessed of means at the time of the purchase. The tickets for the passage of the family had been furnished by Patrick, and it is not a violent presumption to suppose, he still retained, â portion, at least, of the hundred dollars sent by his daughter, and probably, something, derived from the proceeds of the sale of such household effects, as were needed to afford him and his family a meagre comfort in the place from whence he came. Nor could the Court be warranted in pronouncing from the evidence that the mother was not entitled to some portion, if not the whole, of the fund, even though she had saved it from the money placed in her hands by her sons. Her labor, and that of her husband and daughter, was the equivalent of money; it saved the family from expenditures for necessary comforts, which otherwise must have been bought and paid for out of the common fund. To these services, supplemented, perhaps, by the skilful frugality of the mother, it is possible the entire fund may be attributable. It would be grossly unjust to deny to these persons the full benefit of their labor. Yet to enable the Court to determine these matters no accounts

are stated, no figures are given, and the whole subject is relegated to the field of vague speculation. In addition to this the long delay in setting up this claim, in our judgment, ought greatly to enhance the difficulty of maintaining the case of the appellants. The title of John Durkin made in 1875, appears never to have been questioned, until after the mother's death in 1891. There is not a single fact disclosed by the proof, that tends to show that his title was not acquiesced in during all this time by the whole family. That this was the case for the long period of sixteen years, is certainly a strong circumstance adverse to the claims which the appellants now set up.

We shall reverse the order appealed from, and remand the cause, that the proceeds of sale may be allowed after the payment of costs and expenses, to each of the five children of the deceased in equal proportions.

*Order reversed, and*
*cause remanded.*

(Decided 7th December, 1892.)